SAVOY, Judge.
Plaintiff filed this tort action seeking to recover $1,000.00 from H. H. Fisher and Fisher’s liability insurer. As a cause of action Girard alleged that on or about April 25, 1968, he stopped at defendant’s service station in Alexandria, Louisiana, asking an employee of defendant to lubricate his 1964 Pontiac Grand Prix and to change the engine oil and oil filter while he went next door to a restaurant to eat. After finishing his meal, Girard returned to his vehicle, paid his service station bill, and started driving toward Fort Polk, Louisiana, where he was stationed; when, after proceeding some ten miles down the highway at a speed of fifty to sixty miles per hour with his automobile air conditioner on, he heard strange noises coming from the car engine. After guiding the vehicle to the shoulder of the road, the engine stopped and subsequent attempts to start it were to no avail. The vehicle was then hauled by wrecker to the Turpin Pontiac Agency in Alexandria for examination and repairs.
Girard brought suit claiming that defendant’s employees either negligently failed to replace the engine oil after draining it, or they negligently failed to replace and/or secure the oil filter. Defendants filed a general denial and affirmatively alleged that the damage to the engine was the result of other mechanical failures and was in no way attributable to the services performed by defendant or his employees.
After a hearing on the merits, the trial court rendered judgment for defendants holding that although the doctrine of res ipsa loquitur had come into play, defendants had successfully proven that the engine malfunction was not caused by any fault on their part.
On appeal plaintiff contends the trial court erred in not considering the abundant *485 circumstantial evidence in connection with the expert testimony offered on his behalf. Defendants answered the appeal contending the trial court correctly decided the factual issue presented, and in the absence of manifest error, the finding of the trial court must be affirmed.
Mindful of the manifest error rule by which our appellate courts are guided when deciding factual issues presented for determination, let us proceed to analyze the evidence presented on behalf of defendants to see if it supports the finding of the trial court.
Mr. Fisher testified he was the owner and operator of the service station involved in the suit and had operated it for some ten and one-half years without having had any prior difficulty similar to the one presented herein. He said he did not actually supervise or do any work on the vehicle in question, and that the work was done by an employee of his for two years, Mr. Archie Coleman. When interrogated as to the general operational procedure followed in changing the engine oil and oil filter, he said when the oil is draining with the vehicle on the rack, they change the filter, lubricate the car, check the transmission or rear end, replace the oil plug, and then let the vehicle down for some additional checks. After replacing the oil, they then start the engine, raise the vehicle and check the oil filter and plug for leaks at that time. If no leaks were observed, the vehicle then would be lowered and removed from the rack.
Mr. Archie Coleman testified at the trial that he was working for Mr. Fisher when the vehicle was serviced and had been so employed for some one and one-half to two years, although at the time of the trial he owned his own service station in Glen-mora. He said he had been in the service station business off and on for some thirteen years. When asked if he followed a set procedure in lubricating vehicles and in changing the oil and filter, he answered in the affirmative, saying that he followed a procedure almost identical to that described by Mr. Fisher; and added that he usually stayed with each vehicle on the rack until it was finished. He testified that no occurrence similar to the one alleged in this suit had ever previously occurred to him while in the employ of Mr. Fisher or Central Louisiana State Hospital; and although he did not recall servicing the Grand Prix, he felt certain that he did not depart from his usual operational manner.
Mr. James Chrestman testified on behalf of the defendants as an automobile mechanic at Turpin Pontiac for seven years, and stated he would dismantle several Pontiac motors per week on the average. He said that when a motor is dismantled, which motor has been damaged as a result of being operated without oil, the - main bearings and crankshaft turn very blue. He testified that he was the mechanic who dismantled the engine in question, and that when he did so after dropping the oil pan down he noticed approximately one-half to one quart of oil left in the pan, and that two of the rod nuts had backed off the rod journals. It was his opinion that this caused a rod to flop around the oil pan cutting it almost into two pieces, thus causing the loss of oil and the resultant noises heard by plaintiff. He thought that if the engine was operated without oil for a sufficient distance to lock, that there would have been a squealing noise more like a fan belt slipping or an air conditioning belt squealing rather than a clanking noise as indicated by Girard. It was his opinion also that if the engine was driven enough to overheat because of insufficient oil, then there would be no oil remaining in the bottom of the oil pan or in the oil filter. His testimony was to the effect that the oil filter in the engine contained oil, and that had no oil been replaced in the engine it could not have been driven over four or five blocks before “freezing up”. On cross-examination Mr. Chrestman testified that he had seen several GTO engines with oil pans cut by the broken rods in which the engines had not “frozen”. He was further of the opinion that the engine *486 block had been torn into since it left the factory because he found that the pistons in the block had knurled.
A stipulation was entered into between the parties that if Mr. Halliburton, the service manager of Turpin Pontiac, would testify, his testimony would be similar to the facts that Mr. Chrestman testified.
We feel after examining the evidence on behalf of the defendants that there is sufficient evidence available to support the finding made by the trial court, and that we can find no manifest error in the trial court’s decision. It was within the trial court’s discretion to accept the testimony of defendants’ experts who dismantled the engine rather than those experts of plaintiff who merely testified to hypothetical questions without ever actually seeing the engine.
For the reasons assigned the judgment of the trial court is affirmed. Costs of this appeal are to be assessed against plaintiff.
Affirmed.