966 So.2d 36 (2007)
Dronzy LINNEAR and Charles Linnear
v.
CENTERPOINT ENERGY ENTEX/RELIANT ENERGY and Insurer Jointly and in Solido.
No. 06-C-3030.
Supreme Court of Louisiana.
September 5, 2007.
Rehearing Denied November 2, 2007.
*38 Phelps Dunbar, Harry Alston Johnson, III, Baton Rouge, Barham, Warner & Bellamy, Henry Nathan Bellamy, Shreveport, for applicant.
Davis Law Firm, S.P. Davis, for respondent.
VICTORY, J.
We granted this writ application to determine whether the court of appeal properly applied the doctrine of res ipsa loquitur to this negligence case. After reviewing the record and the applicable law, we find that the doctrine does not apply. Accordingly, we reverse the judgment of the court of appeal and reinstate the jury verdict and trial court judgment in favor of the defendant.

FACTS AND PROCEDURAL HISTORY
Plaintiffs, Charles and Dronzy Linnear, allege that on the morning of July 16, 2002, Mrs. Linnear stepped into a sinkhole next to her driveway as she was placing items in the backseat of her car. The Linnears sued CenterPoint Energy Entex/Reliant Energy[1] ("CenterPoint") alleging that Mrs. Linnear's fall was caused by CenterPoint's negligence. Eleven days before the accident, CenterPoint was dispatched to investigate a gas leak at the Linnear residence. After locating the leak, turning off the gas, and installing a temporary line to maintain service, CenterPoint returned a few days later to install a new gas line. The crew dug a trench four inches wide and eighteen inches deep running parallel to the Linnear's driveway, with approximately two *39 to three feet between the trench and the driveway. They installed an 80 to 90 foot gas line from the meter located in the back of the house to the street in the front of the house. The Linnears used the area alongside the driveway as a path for walking to and from their vehicles and there is no dispute that the accident occurred in the general area where the trench was dug. The Linnears alleged that CenterPoint negligently filled the trench and failed to resod the area, resulting in the sinkhole that caused Mrs. Linnear to fall.
At trial, Mrs. Linnear testified that in the early morning hours of July 19 it had rained but was no longer raining at 9:30 a.m., the time of the accident. She testified that she and her three-year-old granddaughter were preparing to take some items to church. While her granddaughter stayed on the porch, Mrs. Linnear walked with the items to the car and placed them in the backseat behind the driver's seat. She testified that when she stepped backwards from the open rear door, her right foot sank into a sinkhole and that her right leg sank into the ground up to her knee. She fell forwards and felt a sharp pain in her back. She was able to pull herself up using the door handle and then got her granddaughter from the front porch and continued on her errand. She was later diagnosed with a herniated disk and underwent surgery in December of 2003. She testified that the area where the accident occurred was wet because it had rained that morning but it was not muddy and appeared stable.
Mr. Linnear testified that Mrs. Linnear called him after the accident and he returned home at around 11:30 a.m. to find her in pain. He took photographs of the accident scene, one of which showed a muddy area with an indentation of a footprint in the mud. The Linnears testified that it had rained early in the morning of July 19, was not raining at the time of the accident, but had rained again between the time of the accident and the time the photograph was taken. He testified that they had lived in the house for 23 years and used that area of the yard often and no one had ever fallen in that area.
Workers for CenterPoint testified as to the work done at the Linnear's residence. Herbert Burkins, the crew leader, testified the trench was back-filled by adding up to four inches of dirt at a time and stepping on the area using body weight after each addition to compact the dirt. The crew then took turns using a 30-pound steel tamper to tamp down and harden the dirt. A backhoe was then used over some of the area to further harden the dirt. After a visual check, Burkins inserted a screwdriver into the ground to check the compaction and the entire area was fully compacted. He testified that the crew did not use any extra dirt in the trench, nor did they add any sod on top. Thomas Salter gave testimony consistent with Burkins regarding the methods of compaction used. Specifically, he testified that he weighed 230 pounds and that he personally compacted the soil by putting two to three inches of soil in the trench and then compacting it as follows: "One foot is placed inside the trench, the other foot on the actual shift, which would be the ground level, and you actually just walk in there, almost like a bunny hop, and push your weight up and down on the actual pipe itself to compact the soil." He repeated the process of adding soil and walking over it until the soil was level. Once the soil was level, they used a six by six inch 30-pound steel tamper to manually tamp down the soil, then "we take the piece of equipment, run it over with the tires, and  to make sure that the ground is level and compact." He testified that based on the way they compacted the trench, it was not possible that someone Mrs. Linnear's size could step in *40 the trench and sink to a point just below her knee. In addition, he testified that he had seen sinkholes before and they appear in a circular pattern, not as depicted in the photograph showing an imprint of Mrs. Linnear's footprint as alleged by plaintiffs. He further testified that the area alongside the driveway where the accident occurred was not covered in grass before they dug the trench, and similarly they did not place any sod over that area afterwards. He testified that the yard was in good condition after they completed the job and that the soil covering the trench was sturdy and uniform. Salter testified that he had done hundreds of jobs and they were all done this same way. After the accident, Salter testified, he returned to the property and distributed about half a wheelbarrow of dirt throughout the area and sodded the area as requested. He did not recall filling any holes in the area.
The photographs that Mr. Linnear had taken after the accident were also introduced into evidence. The photographs depict an indentation of a footprint in a muddy area and a garden hose in the area which was not there when the trench was filled. Based on these photographs, the defense argued that Mrs. Linnear simply stepped into an open and obvious muddy area and slipped; had she stepped into a sink hole, the footprint in the mud would have gone down much deeper than depicted in the photograph. The defense also argued that the plaintiffs failed to bring in expert testimony to prove their case by way of soil borings.
Prior to the case being sent to the jury, the plaintiffs requested a jury instruction on the doctrine of res ipsa loquitur, which the trial court rejected. After a three-day jury trial, the jury returned a verdict in favor of CenterPoint, giving a negative answer to the first question on the jury verdict form, which was "Does the preponderance of the evidence establish that CenterPoint Energy or any of its employees were negligent and that their negligence caused or contributed to the accident on July 16, 2002?"
Plaintiffs filed post-trial motions for a judgment notwithstanding the verdict and for a new trial, claiming the verdict was contrary to the law and the evidence because CenterPoint's witnesses were not credible and the Linnears were credible. The trial judge denied the motions based on the following reasoning:
The Court is unable to grant the motion for new trial or JNOV. The photographic evidence that was introduced, in the Court's opinion, belied the testimony of Ms. Linnear. She maintained that she stepped into a sink hole [sic] of some sort, but the photographs just show an area, easily observable to everybody, where there was not grass, and it was muddy, and the footprint was photographed by her husband, in my impression, certainly the same day, but within a couple of hours of when it happened. And it simply does not show any kind of sink hole [sic]. It simply shows a footprint in the mud where the lady slipped in the mud.
And so I'm unable to believe that the jury was led astray, and if I substituted my judgment it would be exactly the same as the jury's. She simply  the evidence shows  the photographic evidence that the plaintiff's [sic] took, simply show a muddy footprint, no sink hole [sic], no anything like that, just slipped in the mud on a rainy day, and how [CenterPoint] is responsible for that has not been proven in this case.
The Linnears appealed to the Second Circuit, and when the record was lodged, six of the nine members of that court recused *41 themselves.[2] On appeal, the court of appeal concluded that the trial judge's refusal to give a res ipsa loquitur instruction constituted legal error which "impeded" the fact-finding process of the jury. Linnear v. CenterPoint Energy Entex/Reliant Energy, 06-41171 (La.App. 2 Cir. 8/4/06), 945 So.2d 1. Accordingly, the court conducted a de novo review of the record and found liability on the part of CenterPoint, awarding a judgment in the amount of $273,032.74. CenterPoint filed a petition for rehearing and two ad hoc judges were appointed to consider the rehearing application, along with the original three-judge panel. The application was denied 3-2, with the two ad hoc judges filing a lengthy dissent. We granted CenterPoint's writ application to consider whether the court of appeal erred in finding that the doctrine of res ipsa loquitur applied to this case. Linnear v. CenterPoint Energy Entex/Reliant Energy, 06-C-3030 (La.3/9/07), 949 So.2d 429.[3]

DISCUSSION
Analysis of the doctrine of res ipsa loquitur reveals that the court of appeal erred in applying that doctrine to this case. As explained below, the appellate court's errors were its misapplication of res ipsa loquitur to a case involving direct evidence and its misinterpretation of language from Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654 (La.1989) (on rehearing) regarding the standard to be used by the trial court in determining whether to give a res ipsa loquitur instruction to the jury.
The court of appeal began its analysis of res ipsa loquitur on the right track, stating the law as follows:
The doctrine of res ipsa loquitur applies in cases where the plaintiff uses circumstantial evidence alone to prove negligence by the defendant. Cangelosi, supra. The doctrine, meaning "the thing speaks for itself," permits the inference of negligence on the part of the defendant from the circumstances surrounding the injury. Id. As explained in Cangelosi, supra, the doctrine applies when three criteria are met. First, the injury is the kind which ordinarily does not occur in the absence of negligence. While the plaintiff does not have to eliminate all other possible causes, he must present evidence indicating at least a probability that the accident would not have occurred absent negligence. Second, the evidence must sufficiently eliminate other more probable causes of the injury, such as the conduct of the plaintiff or a third person. The circumstances must warrant an inference of negligence. Third, the negligence of the defendant must fall within the scope of his duty to plaintiff. This may, but not necessarily, be proved in instances where the defendant had exclusive control of the thing that caused the injury.
945 So.2d at 8. This is indeed a correct statement of the well-known requirements of the res ipsa loquitur doctrine. We further explained in Cangelosi that "[t]he doctrine of res ipsa loquitur involves the simple matter of a plaintiff's using circumstantial *42 evidence to meet the burden of proof by a preponderance of the evidence" and "merely assists the plaintiff in presenting a prima facie case of negligence when direct evidence is not available." Cangelosi, supra at 665.[4] As early as 1957, this Court noted that "it is the lack of direct evidence indicating negligence on the part of the defendant as the responsible human cause of the particular accident which actually furnishes the occasion and necessity for invoking the rule in its strict and distinctive sense." Larkin v. State Farm Mut. Auto. Ins. Co., 233 La. 544, 97 So.2d 389 (1957); see also Walker v. Union Oil Mill, Inc., 369 So.2d 1043, 1048 (La. 1979) ("Res ipsa loquitur does not apply if there is sufficient direct evidence explaining the occurrence and establishing the details of the negligence charged.") Most recently, in Lawson v. Mitsubishi Motor Sales of America, 05-257 (La.9/6/06), 938 So.2d 35, 51, we held that a plaintiff cannot take advantage of the doctrine where direct evidence of defendant's possible negligence is available, but could not be considered because the plaintiffs had tampered with the evidence before the defendants could examine it.
Although the court of appeal correctly recognized that res ipsa loquitur is only applicable where the plaintiff offers only circumstantial evidence from which negligence might be inferred, it went on to apply this doctrine in a case where direct evidence was not only available, but was presented by both parties. The plaintiffs used the testimony of Mrs. Linnear, who gave her eyewitness account of how the accident happened. Both Linnears testified as to the condition of the yard after CenterPoint finished installing the new gas line in an attempt to show that CenterPoint installed the gas line and filled the trench in a negligent manner. The defendant presented the testimony of two workers who actually installed the gas line and filled the trench in an attempt to show that their performance was not negligent. Although some circumstantial evidence was presented, including photographs showing an indented footprint in a muddy area where the trench was dug and showing the area with a garden hose nearby, this was not a "circumstantial evidence only" case, where direct evidence was unavailable to the plaintiff such that he was forced to rely on circumstantial evidence. This was a case where there was competing direct evidence, along with some circumstantial evidence presented by plaintiffs (which did not aide their case), and the jury was forced to make a credibility call. As we stated in Cangelosi, and as recognized by the court of appeal in this case, res ipsa loquitur only applies where direct evidence of defendant's negligence is not available to assist the plaintiff to present a prima facie case of negligence. In this case, not only was it available, but it was presented to and considered by the jury.
The court of appeal's next error was in the methodology it used in determining that a res ipsa loquitur instruction should have been given and was based on a misinterpretation of language from Cangelosi. The court of appeal reasoned as follows:
In deciding whether to instruct the jury on res ipsa loquitur, the trial court employs a standard similar to that for directed verdicts. Id. The trial *43 court determines whether the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable persons could not arrive at a contrary verdict. If reasonable minds could reach different conclusions as to whether the defendant's negligence caused the plaintiff's injury, then the trial court must instruct the jury on res ipsa loquitur. Cangelosi, supra; Smith v. Bundrick, 27,552 (La.App. 2 Cir.11/3/95), 663 So.2d 554. The jury then decides whether to infer negligence on the part of the defendant from the circumstances of the case.
From our review of the record, we find that the trial court erred in not instructing the jury on res ipsa loquitur at the close of the case. The trial testimony included Mrs. Linnear's account of how the accident happened, her assertion that she fell in a sinkhole, and testimony that no such accidents had ever happened in their yard before CenterPoint dug the trench and that none have happened since CenterPoint returned to restore the property to its pre-repair condition. The trial testimony also included the description of how CenterPoint's crew refilled the trench, compacted the soil, and left the yard in good condition. The testimony was such that reasonable minds could reach different conclusions as to whether CenterPoint's negligence caused Mrs. Linnear's injury. The trial court recognized as much in denying CenterPoint's motion for involuntary dismissal at the close of the plaintiffs' case after all witnesses had testified, except for Salter, who was called back on direct for CenterPoint. Moreover, we find that the failure to instruct the jury on res ipsa loquitur precluded the jury from rendering a verdict based on the law and the facts. This case turned on circumstantial evidence, but the jury was not even instructed on that aspect of the law. The jury should have been given instruction on circumstantial evidence and res ipsa loquitur to be allowed to evaluate the evidence and determine whether the circumstances warranted the inference that the defendant's negligence caused the plaintiff's injury. Thus, we find that the res ipsa loquitur instruction should have been included by the trial court. Having recognized the error of law, we are charged to conduct a de novo review of this complete record and render judgment.
945 So.2d at 8-9.
This analysis goes far astray of the intent of Cangelosi in setting out the trial court's standard of review in determining whether a res ipsa loquitur instruction is warranted. First of all, as stated above, the court of appeal never should have reached this determination as res ipsa loquitur does not apply where direct evidence is used to explain the accident or injury. Secondly, the standard set out by Cangelosi does not mean that a trial judge must give a res ipsa loquitur instruction anytime the parties present conflicting evidence of negligence and reasonable minds could reach different conclusions as to whether the defendant's negligence caused the plaintiff's injury. If that were the case, the trial judge would have only two choices in every negligence case: either grant a directed verdict or give a res ipsa loquitur instruction.
However, we recognize that the language in Cangelosi is not quite as clear as it could be and evidently led to confusion in this case. Thus, some clarification is necessary. Cangelosi simply requires the trial judge to undertake the following analysis. In cases involving only circumstantial evidence, res ipsa loquitur may be applicable, if the trial judge sequentially *44 determines that the three criteria for its use are satisfied. The three criteria are: (1) the injury is of the kind which does not ordinarily occur in the absence of negligence on someone's part; (2) the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or of a third person; and (3) the alleged negligence of the defendant must be within the scope of the defendant's duty to the plaintiff. As Cangelosi instructs, the trial judge determines whether reasonable minds could differ on the presence of all three criteria. If reasonable minds could not conclude that all three criteria are satisfied, then the legal requirements for the use of res ipsa loquitur are not met. Consequently, the jury should not be instructed on the doctrine. If reasonable minds could differ as to all three criteria, then the law permits the use of res ipsa loquitur to allow the jury to infer negligence if it chooses to do so from all the circumstances presented, including the incident itself.[5]
Using the correct analysis, this case does not pass the first requirement, as this injury was of the kind which can ordinarily occur in the absence of negligence on someone's part. In Cangelosi, we explained that "the event must be such that in light of ordinary experience it gives rise to an inference that someone must have been negligent." Cangelosi, supra at 666 (emphasis added). People fall in their yards and injure themselves all the time without any third party involvement at all. We have long held that "[r]es ipsa loquitur, as `a qualification of the general rule that negligence is not to be presumed,' must be sparingly applied." Spott v. Otis Elevator Co., 601 So.2d 1355, 1362 (La. 1992) (citing Day v. National U.S. Radiator Corp., 241 La. 288, 128 So.2d 660, 665 (1961)). The doctrine only applies "when the circumstances surrounding an accident are so unusual" as to give rise to an inference of negligence. Id. It does not apply to cases involving ordinary accidents or injuries that often occur in the absence of negligence, such as this one. Thus, the court of appeal erred in failing to consider this requirement. It is clear that reasonable minds could not differ on this point. That being the case, there is no need to consider the other two requirements.
Because the doctrine of res ipsa loquitur is not applicable, the court of appeal erred in conducting a de novo review of the record. Instead, the proper standard of review is the manifest error standard. A reviewing court may not set aside a district court's finding of fact in the absence of manifest error or unless it is clearly wrong, and where there is conflict in the testimony, inferences of fact should not be disturbed upon review, even though the reviewing court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Stobart v. State, through DOTD, 617 So.2d 880, 882 (La.1993). Breach of duty and cause in fact are factual questions to be determined by the factfinder. Benjamin ex rel. Benjamin v. Housing Authority of New Orleans, 04-1058 (La.12/1/04), 893 So.2d 1, 4. In this case, as we explained above, this case involved *45 competing evidence and the jury was forced to make a credibility call, which it did, finding in favor of the defendant. Because we find that a reasonable factual basis exists for the jury's finding, the jury's verdict was not manifestly erroneous.

CONCLUSION
Res ipsa loquitur is a rule of circumstantial evidence which allows an inference of negligence on the part of the defendant if the facts indicate the defendant's negligence, more probably than not, caused the injury. It applies in cases involving circumstantial evidence, rather than direct evidence, provided the plaintiff establishes the following foundation of facts: (1) the injury is of the kind which does not ordinarily occur in the absence of negligence; (2) the evidence sufficiently eliminates other possible causes of the injury, such as the plaintiff's own responsibility or the responsibility of others; and (3) the alleged negligence of the defendant must fall within the scope of his duty to the plaintiff, which will often be the case if the defendant had exclusive control of the thing or situation that caused the injury to the plaintiff. After all the evidence has been presented, the trial judge must determine whether to give the instruction, which would allow the jury to infer the defendant's negligence. In order to give the instruction, he must satisfy himself that reasonable minds could differ as to the presence of each of the three requirements. In this case, the court of appeal misinterpreted our prior case law to mean that, regardless of whether direct or circumstantial evidence is presented and disregarding the three requirements, if reasonable minds could differ as to whether defendant's negligence caused plaintiff's injury, the instruction must be given. As explained above, this was clear error.

DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed and the jury verdict and trial court judgment in favor of the defendant is reinstated.
REVERSED; TRIAL COURT JUDGMENT REINSTATED.
JOHNSON, J., dissents.
NOTES
[1] The correct name of defendant is CenterPoint Energy Arkla, a division of CenterPoint Energy Resources Corp.
[2] Although no reasons were given, after an opinion had been issued and rehearing application filed, each of the six recused judges stated that he or she had a working relationship with Mr. Linnear because he had previously been the supervisor of the Second Circuit building and continued to be involved with the maintenance of the building. The remaining three judges who had not recused themselves served as the appellate panel.
[3] Although CenterPoint assigned two procedural issues as error in their writ application, we pretermit consideration of those issues and will only address the issue of whether res ipsa loquitur applies to this case.
[4] "A fact established by direct evidence is one which has been testified to by witnesses as having come under the cognizance of their senses." Cangelosi, supra at 664 (citing J. Wigmore, Evidence, § 25, at 954 (1983)). Circumstantial evidence on the other hand, is "evidence of one fact, or of a set of facts, from which the existence of the fact to be determined may reasonably be inferred." Id. at 664-665 (citing W. Prosser & W. Keeton, The Law of Torts, § 39, at 242 (5th ed.1984)).
[5] Cangelosi stated the standard as "whether the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable men could not arrive at a contrary verdict." 564 So.2d at 667. What that really means is that if the facts and inferences point so strongly and overwhelmingly in favor of the defendant on those three points, then the instruction should not be given. For if the trial judge finds that reasonable minds could only find that a particular requirement has been met, which is stronger than finding that reasonable minds could differ, then of course that requirement is met and the trial judge moves on to analyze the next requirement.