CLARENDON AMERICA INSURANCE COMPANY
v.
CHARTER COMMUNICATIONS LLC
2007 CA 1427.
Court of Appeal of Louisiana, First Circuit.
February 8, 2008.
Not Designated for Publication
JONATHAN F. RABURN, Shreveport, La, Counsel for Plaintiff/Appellee Clarendon America Insurance Company.
MARK E. YOUNG, GEORGE C. DRENNAN, New Orleans, La, Counsel for Defendant/Appellant Charter Communications, LLC.
Before: WHIPPLE, GUIDRY and HUGHES, JJ.
WHIPPLE, J.
Defendant, Charter Communications, LLC (Charter), appeals an adverse default judgment rendered in favor of the plaintiff, Clarendon America Insurance Company (Clarendon). For the reasons that follow, we reverse the judgment of the trial court and remand the matter for further proceedings.

BACKGROUND
Clarendon, a foreign insurance company doing business in Louisiana, provided a Commercial Inland Marine insurance policy to Daigle's Mobile Home Movers (Daigle), which is in the business of transporting and moving mobile homes. On August 16, 2006, Daigle was transporting a mobile home on Highway 43 in Livingston Parish, when the mobile home struck a communications line allegedly owned by Charter, causing extensive damage to the mobile home. In accordance with its contractual obligations under the insurance policy it provided, Clarendon paid for the property damage to the mobile home. Clarendon then filed suit against Charter, seeking reimbursement of the amounts it had paid pursuant to the policy. According to Clarendon's petition, the communications line at issue crossed the highway and was below the 20-foot vertical clearance mandated by LSA-R.S. 48:381.
Clarendon filed its petition on December 29, 2006, and Charter was served through its registered agent for service of process on January 18, 2007. No answer or other responsive pleading was ever filed, and Clarendon eventually moved for a preliminary default on April 10, 2007. The preliminary default was entered against Charter on April 23, 2007.
On May 1, 2007, Clarendon confirmed the default judgment in open court. At the confirmation hearing, Clarendon submitted a certified copy of its insurance policy in favor of Daigle, along with various affidavits. The trial court determined that Clarendon had established its prima facie case and granted judgment in favor of Clarendon. On May 7, 2007, the trial court signed a judgment in favor of Clarendon and against Charter in the amount of $38,005.56, along with judicial interest from the time of demand until paid and court costs "from this point forward." Notice of the judgment was mailed on May 9, 2007.
On May 29, 2007, Charter filed a request for notice and an answer generally denying the allegations of the petition. The answer pled that Charter had no notice, whether actual or constructive, of the condition that allegedly caused the accident. Also on that date, Charter filed a motion and order for suspensive appeal of the default judgment.

DISCUSSION
In its brief to this court, Charter offers no explanation as to why it did not file an answer. Charter does not suggest that it was not properly served, nor does it deny that it is the owner of the communications line at issue. Instead, Charter simply contends that the judgment should be reversed because Clarendon failed to prove its prima facie case. Specifically, Charter contends that Clarendon failed to offer any evidence to prove that Charter had actual or constructive notice of the condition or that the communications line at issue was in Charter's custody or control.
A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case. LSA-C.C.P. art. 1702(A). A prima facie case is established by evidence that proves the essential allegations of the petition as fully as if each allegation had been specifically denied. Clary v. D'Agostino, 95-0447, p. 2 (La. App. 1st Cir. 12/15/95), 665 So. 2d 792, 793. When reviewing a default judgment, the Court of Appeal is restricted to determining whether the record contains sufficient evidence to prove a prima facie case. Clary, 95-0447 at p. 2, 665 So. 2d at 794.
Clarendon's petition states a claim for damages pursuant to LSA-C.C. art. 2317.1, which provides for the liability of an owner or custodian of a thing for damage occasioned by its ruin, vice, or defect only when (1) the owner or custodian knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect that caused the damage; (2) the damage could have been prevented by the exercise of reasonable care; and (3) the owner or custodian failed to exercise such reasonable care. As a preliminary matter, the plaintiffs bear the burden of proving at trial that the property that caused the damage was in the "custody" of the defendants. See Tyler v. Our Lady of the Lake Hospital, Inc., 96-1750, p. 6 (La. App. 1st Cir. 6/20/97), 696 So.2d 681, 685.
Custody, distinct from ownership, refers to a person's supervision and control (garde) over a thing posing an unreasonable risk of harm. Garde is the obligation imposed by law on the proprietor of a thing, or on one who avails himself of it, to prevent it from causing damage to others. The fault of the person thus liable is based upon the failure to prevent the thing from causing unreasonable injury to others. Tyler, 96-1750 at p. 6, 696 So. 2d at 685.
At the confirmation hearing, Clarendon submitted various affidavits, as well was a certified copy of the insurance policy it provided to Daigle. The first affidavit was from Dan Hodnett, the head of the Claims Department for Deep South Surplus of Louisiana, Inc. (Deep South), Clarendon's managing general agent. According to this affidavit, Mr. Hodnett personally supervised the handling of the claim made by Daigle. Although he states in the affidavit that the communications line at issue was owned by Charter, there is no support of record for this claim. No documentation to support this statement is attached to the affidavit, nor does Mr. Hodnett's affidavit offer any explanation as to how he determined that the line was owned by Charter. In addition, Mr. Hodnett's affidavit makes no representations concerning Charter's knowledge of the defect.
The next affidavit in the record is that of Veronica Tribu-Walker, the head of the Accounts Payable department for Deep South. Ms. Walker's affidavit merely addresses the amounts expended by Clarendon on the claim. The affidavit does not offer any information regarding Charter's ownership of the line or its knowledge of the defect.
Clarendon also submitted the affidavit of Kirke Goff, a claims adjuster for Deep South, who handled the claim at issue. Like Mr. Hodnett's affidavit, Mr. Goff's affidavit offers conclusory statements regarding Charter's ownership of the line, but it contains no information or documentation supporting the statement that Charter owns or otherwise controls the line. Further, the affidavit contains no information regarding Charter's knowledge of the defect.
Also submitted were the affidavits of Neil Soileau, an authorized representative of Jim Tatman's Mobile Homes, which was the seller of the mobile home being transported by Daigle at the time of the accident and Dwayne Savoy, an authorized representative of Daigle. Mr. Savoy's affidavit contained the same information previously provided by Mr. Hodnett and Mr. Goff. However, Mr. Soileau's affidavit specifically deleted (by scratching through) any references to Charter's alleged ownership of the line.
After a thorough review, we are obliged to conclude that the evidence submitted by Clarendon is insufficient to prove all elements of its claim. While we are aware of the difficult position Clarendon was placed in as a result of Charter's unexplained failure to respond to the suit, the only support of record for the essential claim that Charter owns or controls the line in question is the conclusory allegations contained in the affidavits. Although LSA-C.C.P. art. 1702 authorizes the use of affidavits in the confirmation of default, the affidavits used by Clarendon to prove ownership or control were submitted without any supporting evidence or documentation; thus, these affidavits constituted inadmissible hearsay. See Cunningham v. M & S Marine, Inc., XXXX-XXXX, p. 5, 923 So. 2d 770, 774 (La. App. 4th Cir. 1/11/06). Also, these affidavits provide no evidentiary basis to prove that Charter had actual or constructive knowledge of the defect. Absent evidence of Charter's knowledge of the defect or its ownership or control over the communications line, we must find that Clarendon failed to present sufficient evidence to establish a prima facie case against Charter.[1]
Clarendon argues in its brief to this court that the doctrine of res ipsa loquitur should apply to help it to establish its prima facie case. This doctrine applies in cases where the plaintiff uses circumstantial evidence alone to prove negligence by the defendant. The doctrine permits the inference of negligence on the part of the defendant from the circumstances surrounding the injury and applies when three criteria are met. First, the plaintiff must show the injury is the kind that ordinarily does not occur in the absence of negligence. While the plaintiff does not have to eliminate all other possible causes, he must present evidence indicating at least a probability that the accident would not have occurred absent negligence. Second, the evidence must sufficiently eliminate other more probable causes of the injury, such as the conduct of the plaintiff or a third person. The circumstances must warrant an inference of negligence. Third, the negligence of the defendant must fall within the scope of his duty to the plaintiff. This may be proved in instances where the defendant had exclusive control of the thing that caused the injury. Linnear v. CenterPoint Energy Entex/Reliant Energy, XXXX-XXXX, p. 6 (La. 9/5/07), 966 So. 2d 36, 41.
The circumstances of this case are not appropriate for the application of res ipsa loquitur. As noted above, the doctrine permits the inference of negligence based upon the circumstances surrounding the injury. There is no evidence to demonstrate that Charter owned the communications line in question or that Charter had knowledge of the alleged defect. Thus, there is no evidence from which such an inference can be made to conclude that Charter's negligence led to the accident in question.

CONCLUSION
For these reasons, the judgment of the trial court is reversed, and this matter is remanded to the trial court for further proceedings. Each party is to bear its own costs of appeal.
REVERSED AND REMANDED.
NOTES
[1] In its brief to this court, Clarendon suggests that the judgment should be affirmed as Clarendon was hindered in its ability to prove its case, because it did not have the benefit of discovery and Charter failed to answer the petition. While we are cognizant that Charter's failure to answer seemingly prevented Clarendon from availing itself of certain forms of discovery, no request for admissions of fact was employed herein. See LSA-C.C.P. arts. 1466 and 1467.