Judgment rendered August 27, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,293-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JA'QUARRIUS IGNONT                     Plaintiff-Appellee

versus

RICK BREEN D/B/A BREEN'S               Defendant-Appellant
RAPID LUBE

* * * * *

Appealed from the
Monroe City Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2021CV00858

Honorable Tammy Deon Lee, Judge

* * * * *

NELSON, ZENTNER, SARTOR              Counsel for Appellant
& SNELLINGS, LLC
By:  Thomas G. Zentner, Jr.

OFFICE OF ANTHONY J. BRUSCATO         Counsel for Appellee
By:  Anthony J. Bruscato

* * * * *

Before COX, STEPHENS, ROBINSON, HUNTER, and ELLENDER, JJ.

HUNTER, J., dissents with written reasons.

**ROBINSON, J.**

Plaintiff, Ja'Quarrius Ignont ("Ignont"), filed suit in Monroe City Court for damages against Defendant, Rick Breen D/B/A Breen's Rapid Lube ("Breen's"), on July 12, 2021, for claims of negligence in connection with an alleged faulty oil change resulting in damage to Ignont's vehicle as well as general damages for emotional distress resulting from the incident. Following a trial on October 16, 2023, the trial court entered a judgment, filed February 6, 2024, ruling in favor of Ignont and awarding $10,091.26 in property damages, which included $3,341.26 for engine replacement, $6,750 for 90 days' loss of use at $25 per day, and an additional $12,500 in general damage for mental anguish and distress. Breen's appeals.

For the following reasons, we REVERSE the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

Ignont purchased a 2001 Chevrolet Silverado with approximately 260,000 miles for $4,300 on March 8, 2021. On June 1, 2021, Ignont brought the vehicle to Breen's for an oil change. Ignont testified that the vehicle was running well when he purchased it, and from the time of purchase to the oil change, it had run well. He had not observed any sign of an oil leak, and he had not added any oil to the vehicle. However, Breen's service technician commented on the oil change invoice that there was an "unusual engine noise" and a "small oil leak."

According to Ignont, he and his brother were heading toward Vicksburg, MS, immediately following the oil change and had traveled approximately six or seven miles on I-20 when heavy smoke began coming from under the hood and tailpipe. The engine made a loud noise and shut

off. Immediately thereafter, the vehicle's controls failed and the steering wheel quit functioning properly. Ignont was on the inside lane driving approximately 60 mph through moderate traffic, with an 18-wheeler to his right and vehicles behind him. Because the 18-wheeler pulled ahead and the vehicles behind him slowed, Ignont was able to regain control of the vehicle with the help of his brother turning the steering wheel, and get to the shoulder. Ignont and his brother jumped from the vehicle as soon as they pulled over and ran a safe distance, fearing the vehicle would explode. Ignont further testified that their father had burned to death in a car crash ten years prior, and they feared the same was going to happen to them. The smoke subsided with no fire.

Cody Breen ("Cody") testified that Breen's was contacted by Ignont's mother about an hour and a half after Ignont left the Breen's facility to let them know that Ignont's vehicle was broken down on the I-20 shoulder near Pecanland Mall. Cody testified he immediately went to that location, inspected the truck, and concluded that the "engine came apart" from a thrown rod, which he communicated to Ignont at the scene. Cody also stated that the oil filter was "a hair bit loose," and he believed someone other than Breen's personnel had tampered with the filter because it had indentions inconsistent with the tools used at the Breen's facility. Cody further stated that there were four men at the location, not Ignont's mother, as well as a truck nearby with tools in the back.

Ignont testified that he, his brother, and their mother, were the only people there, and no one touched or tampered with the oil filter between the breakdown and Cody's arrival on the scene. He further testified that Cody

2

came to the scene, removed the oil filter, and told Ignont he'd have it tested and get back to Ignont in a couple of days, but that he never contacted Ignont after he left messages. Cody testified that he removed the filter, took it back to his place of business, tested it in house, and threw it away two days after the incident, but that he never told Ignont he would contact him. Cody stated that Ignont's mother called him to say that if Breen's refused to repair the car, Ignont would seek legal counsel.

Breen's video footage shows that the vehicle was not leaking oil when it left Breen's, and photos taken at the scene by Cody showed significant amount of oil leaking in the area of the engine with the thrown rod, but not much near the filter itself. Cody testified that had the filter been loose when it left, oil would have already started to leak and the vehicle would have broken down immediately instead of several miles down the road. Ignont argued that although the video does show the vehicle's oil getting changed and that the mechanic was holding a wrench immediately before putting in the new oil filter, it was not possible to see the mechanic's hands in order to determine whether the filter was adequately tightened. Cody also testified as to the longevity of his family's business, stating that it has never experienced an incident like the one at hand after performing thousands of oil changes.

Frank Nettles ("Nettles"), who was qualified as an expert automotive mechanic, testified on behalf of Breen's. Nettles looked at pictures taken by Cody of the vehicle and scene, as well as the video from the Breen's facility, but did not inspect the vehicle. Nettles testified that it was his opinion that the vehicle's engine locked up and threw a rod because the side of the engine had a hole in it consistent with a rod being thrown, and the oil was

3

around the hole in the engine block rather than in the vicinity of the oil filter, as it would have been had the vehicle been losing oil first. He also noted the vehicle's high mileage at the time of the oil change and that Breen's service invoice included a comment made by personnel that there was an "unusual engine noise." He further commented that the indentions on the oil filter suggested tampering. Nettles stated that if the vehicle had an improperly installed oil filter, then it would have leaked a large amount of oil at and/or near the facility, which it did not, and the vehicle would not have made it "two to three miles down the road" before experiencing significant problems. Video footage was offered at trial showing that when an oil filter was not properly tightened on a vehicle, oil would be gushing out of the vehicle immediately upon starting the engine, as well as the standard oil change procedures used by Breen's, including a start engine test to ensure there are no leaks.

The trial court found in favor of Ignont, stating, in part, the following reasoning in its judgment:

> Testimony elicited at the trial revealed that the Petitioner sought and selected Defendant's place of business to properly provide an oil change service on his 2001 Chevy Silverado. Yet, the Defendant wholly failed to perform a professional job on the truck, which resulted in the Petitioner's encountering a harrowing occurrence in less than two hours after leaving the shop. Moreover, this Court was concerned by the actions of Mr. Breen in traveling to Mr. Ignont's location on the side of the Interstate 20, where the vehicle had stalled; removing the oil filter by hand; and leaving the scene with it, while the Petitioner remained stranded.

> The Petitioner, whom this Court determined to be a credible witness, testified that Mr. Breen promised to "check the oil filter out, and get back with him in two to three days." Notwithstanding, he informed that he did not ever hear from the Defendant, nor anyone associated with his business. Mr. Breen, the owner, testified that he "tested it the next day" and then threw

4

the filter away, as "nothing linked it back to me." Mr. Ignont informed that the truck was his sole means of transportation for getting to and from work.

Mr. Frank Nettles, a long-term mechanic, testified that although he had not had the opportunity to look at the Petitioner's particular truck, it appeared that the "engine had locked up and threw a rod," which will happen if no oil is present. He advised that he would have opted to place the truck on a lift, and have it returned to the shop for inspection, as it was "gonna get towed either way."

The court awarded damages for the amounts sought by Ignont: $10,091.26 in property damages and $12,500 in general damage for mental anguish and distress.

**DISCUSSION**

*Res Ipsa Loquitur*

In this case, Ignont, the vehicle owner, delivered his vehicle to Breen's for the purpose of getting the vehicle's oil changed. Per La. C.C. art. 2926, Ignont is considered the depositor, or bailor, who delivered his vehicle to the depositary, or bailee, Breen's, for safekeeping under the obligation of returning it to Ignont upon demand. The trial court found that Breen's "wholly failed to perform a professional job on the truck, which resulted in the Petitioner's encountering a harrowing occurrence *in less than two hours* after leaving the shop." [*Emphasis added.*] It is unclear to what extent the court based its holding upon the depositary relationship and the timeframe between the oil change and the vehicle's breakdown, and whether it applied the doctrine of res ipsa loquitur.

When the deposit is onerous, the depositary is bound to fulfill his obligations with diligence and prudence. La. C.C. art. 2930; *Miller Car Washes, Inc. v. Crowe*, 245 So. 2d 485 (La. App. 2 Cir. 1971), *writ refused*,

5

258 La. 762, 247 So. 2d 862 (1971). Whether the deposit is gratuitous or onerous, the depositary is liable for the loss that the depositor sustains as a result of the depositary's failure to perform such obligations. *Id.* Service stations fall into this category. *Indiana Lumbermen's Mut. Ins. Co. v. Humble Oil & R. Co.*, 170 So. 2d 264 (La. App. 2 Cir. 1964). The evidentiary rules relating to the burden of proof, care, etc., which must be borne by the depositary are analogized to the doctrine of res ipsa loquitur. *Miller Car Washes*, *supra.* In instances where the relationship of bailor and bailee has been established and damage or injury has been shown to the property constituting the deposit, the burden is upon the bailee or depositary to exonerate himself from the presumption of negligence or fault. *Id.*; *Jeter v. Lachle*, 106 So. 2d 808 (La. App. 2 Cir. 1958).

When the bailor has shown that the property entrusted to the bailee was damaged and that such damages are inconsistent with the exercise of due care required of the depositary, the burden of proof then shifts to the bailee to show that the loss did not occur through his fault or negligence. *Indiana Lumbermen's*, *supra.* It is only by establishing his lack of fault that the bailee can exonerate himself from liability for damage to the property. *Id.*; *Kern v. Bumpas*, 102 So. 2d 263 (La. App. 2 Cir. 1958). The plaintiff having proved the deposit of the automobile and the damage done to it while in the possession of the depositary, it has established a prima facie case. *Indiana Lumbermen's*, *supra.*

However, the doctrine of res ipsa loquitur does not apply if there is sufficient direct evidence explaining the occurrence and establishing the details of the negligence alleged. *Linnear v. CenterPoint Energy*

*Entex/Reliant Energy*, 06-3030 (La. 9/5/07), 966 So. 2d 36; *Cangelosi v. Our Lady of the Lake Regional Med. Ctr.*, 564 So. 2d 654 (La. 1989); *Justiss Oil Co., Inc. v. Monroe Air Ctr., L.L.C.*, 45,356 (La. App. 2 Cir. 8/11/10), 46 So. 3d 725. It is the lack of direct evidence indicating negligence on the part of the defendant as the responsible human cause of the particular accident which actually furnishes the occasion and necessity for invoking the rule in its strict and distinctive sense. *Linnear*, *supra*; *Larkin v. State Farm Mut. Auto. Ins. Co.*, 233 La. 544, 97 So. 2d 389 (1957); *Walker v. Union Oil Mill, Inc.*, 369 So. 2d 1043 (La. 1979). In addition, a plaintiff cannot take advantage of the doctrine where direct evidence of defendant's possible negligence is available but could not be considered because the plaintiffs had tampered with the evidence before the defendants could examine it. *Linnear*, *supra*; *Lawson v. Mitsubishi Motor Sales of America*, 05-257 (La. 9/6/06), 938 So. 2d 35. Res ipsa loquitur is applicable when the following three criteria are met: (1) the injury is of the kind which does not ordinarily occur in the absence of negligence; (2) the evidence sufficiently eliminates other more probable causes of the injury, such as the conduct of the plaintiff or a third person; and (3) the alleged negligence of the defendant must be within the scope of his duty to the plaintiff, such as when the defendant exercised exclusive control of the thing that caused the damage. *Id*.

Clearly, the bailment relationship between Ignont and Breen's gives rise to a duty to perform the oil change in a professional and competent manner. It is undisputed that Breen's performed an oil change on Ignont's vehicle and that the vehicle experienced the malfunction after traveling just a few miles down the road, within two hours of the oil change. Ignont

testified that there had been no issues with the vehicle prior to the oil change. As such, the third element of the res ipsa doctrine would be satisfied.

The vehicle malfunction was due to a rod being thrown, though the parties dispute what led to that issue. The fact that the truck had approximately 264,000 miles, with evidence that the engine was making a noise and had a small leak at the time of the oil change, is supportive of the conclusion that the "injury" in this case could easily have occurred absent the negligence of Breen's. Therefore, the first element of the doctrine would fail.

Most importantly in this case, there is ample evidence presented showing that there are other more probable causes of the injury. In fact, the evidence pinpointed the specific cause of the malfunction, which was not due to the negligence of Breen's. Photographs and video showed the hole in the engine from the rod being thrown and the location of the oil spilled, which was consistent with the explanation that the rod was thrown first rather than the oil leak causing the rod to be thrown. Video and testimony also supported the routine practices of Breen's and showed no oil leaks at the Breen's facility that would indicate an improper oil change. Accordingly, the second element of the doctrine would not be met.

Ignont relied solely on his testimony to prove that Breen's acted negligently. He stated that there had been no issues with the vehicle prior to the oil change, and it was not until shortly thereafter that the vehicle suddenly experienced difficulties. He focused on the fact that Cody had removed the filter at the scene and thrown it away a couple of days later, and

that he was not contacted – seemingly in an effort to simply discredit Breen's. He did not provide any pictures, videos, or provide any expert testimony as to the cause of the vehicle's malfunction; rather, he relied only on circumstantial evidence and self-serving testimony. Ignont had the ability to offer additional evidence in support of Breen's alleged negligence but failed to do so. To the extent the trial court applied the doctrine of res ipsa loquitur, it was a mistake of law and the burden of proof should rest with the plaintiff, Ignont.

### *Standard of Review*

The judgment does not refer as to whether the doctrine of res ipsa loquitur was applied, shifting the burden of proof to the defendant, Breen's. Had the doctrine been applied, a de novo review of the matter would be warranted for mistake of law. However, since it is unclear whether the trial court's decision was indeed based on an application of the res ipsa loquitur doctrine, we will review the matter as if there had been no consideration thereof and the burden of proof rested with the plaintiff, Ignont.

A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Stobart v. State through Dept. of Transp. & Dev.*, 617 So. 2d 880 (La. 1993); *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989); *Mart v. Hill*, 505 So. 2d 1120 (La. 1987); *Arceneaux v. Domingue*, 365 So. 2d 1330 (La. 1978). There is a two-part test for the reversal of a factfinder's determinations: (1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong

(manifestly erroneous). *Stobart*, *supra*; *Mart*, *supra*; *Arceneaux*, *supra*. This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. *Id*. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. *Id*.

The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Cosse v. Allen - Bradley* Co., 601 So. 2d 1349 (La. 1992); *Housley v. Cerise*, 579 So. 2d 973 (La. 1991); *Sistler v. Liberty Mutual Ins. Co.*, 558 So. 2d 1106 (La. 1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Rosell*, *supra*; *Arceneaux*, *supra*. Although appellate courts must accord great weight to the factual findings of the trial judge, these same courts have a duty to determine if the factfinder was justified in his conclusions. *Mart*, *supra*; *Parker v. Rhodes*, 260 So. 2d 706 (La. App. 2 Cir. 1972). Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Rosell*, *supra*. An appellate court is not required, because of the foregoing principles of appellate review, to affirm the trier of fact's refusal to accept as credible

uncontradicted testimony or greatly preponderant objectively-corroborated testimony where the record indicates no sound reason for its rejection and where the factual finding itself has been reached by overlooking applicable legal principles. *Mart, supra*; *West v. Bayou Vista Manor, Inc.*, 371 So. 2d 1146 (La. 1979).

In *Bartley v. Fondren*, 43,779 (La. App. 2 Cir. 12/3/08), 999 So. 2d 146, this Court determined that the plaintiff car owners who alleged that a garage had made defective repairs to their vehicle did not prove their case by preponderance of the evidence. Although they had paid $7500 for repairs, waited several weeks, and received unsatisfactory results, they failed to call any expert witnesses or the garage's principals or employees to testify, and they admitted they had driven the car, bought new tires, and made other repairs consistent with a nonfunctioning vehicle.

In *Arceneaux, supra*, the plaintiff was rear-ended by Domingue, who claimed that his brakes had failed. Domingue's expert witness was the mechanic who repaired the brakes, who testified as to what generally could cause brakes to fail, but he did not recall what repairs were made specifically to the vehicle. The plaintiff had testified that he had heard a squealing noise consistent with brake application, and the officers on scene did not find any issues with the brakes when tested. The court found that where the *testimony* of the defendant was not supported by other evidence in the record, and it *was contradicted by all other evidence on the issue*, the jury verdicts in favor of the defendant were clearly wrong, or manifestly erroneous, if predicated on the existence of a latent defect in the braking system.

In *Girard v. Fisher*, 234 So. 2d 484 (La. App. 3 Cir. 1970), the plaintiff had his oil changed at defendant's shop, then started experiencing issues with his vehicle approximately ten miles down the road after leaving the shop. He claimed the defendant either negligently failed to replace the engine oil after draining it or failed to replace and/or secure the filter. The defendants claimed the damage was due to other mechanical failures that were in no way attributable to them. The defendants offered expert testimony as to that particular type of engine, explaining that the noise the plaintiff said the engine was making was not consistent with lack of oil, and that there was still oil in the plan, which would be inconsistent with an improper oil change causing the vehicle to break down. The expert testified that the oil pan had been cut by a broken rod. The Third Circuit found that, although the doctrine of res ipsa loquitur had come into play, defendants had successfully proven that the engine malfunction was not caused by any fault on their part. The plaintiff, on appeal, contended that the trial court erred in not considering the abundant circumstantial evidence in connection with the expert testimony offered on his behalf. The appellate court found no manifest error in the trial court's factual determinations.

This Court reviewed the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Cody, a mechanic himself, testified as to the events that occurred that day surrounding the vehicle's breakdown, his removal and inspection of the filter, Breen's customary business practices as to oil change procedures, and his opinion as to the cause of the malfunction. Photographs and videos showed the hole in the engine from the thrown rod, the location of the

12

spilled oil to explain that the spill was consistent with a thrown rod instead of a loose filter, and of the indentions in the filter that indicated that the filter may have been tampered with by someone other than Breen's. Breen's also retained an expert witness who testified as to the cause of the malfunction being a thrown rod in the engine block where there was some resulting oil leakage, rather than an improper oil change by Breen's causing the thrown rod. Additional videos were introduced showing what would happen to a vehicle if the oil change had not been done properly – an immediate oil leak – which was not the case with Ignont's vehicle, as supported by the Breen's facility footage and the fact that the vehicle made it as far down the road as it did.

Ignont relied solely on circumstantial evidence in support of his theory that the vehicle damage was caused by Breen's negligence and submitted no additional direct evidence whatsoever despite his ability and opportunity to do so. The court found the fact that Breen's did not tow and inspect the vehicle, its disposal of the filter, and that Ignont was not contacted regarding the filter testing, to be "red flags" that seemingly tainted its credibility. While the trial court's determination as to credibility should not be disturbed, the evidence submitted in Breen's defense, and the lack thereof in support of Ignont, cannot be ignored. Ignont simply failed to carry his burden of proof with respect to Breen's fault.

It appears that the trial court's evaluation of the matter was based purely on a credibility determination of the parties. It did not give proper consideration to the direct evidence presented, which was clearly contradictory of Ignont's theory of Breen's negligence. There is no sound

reason for the trial court's rejection of the evidence presented; therefore, we find the trial court's finding in favor of Ignont to be clearly wrong and manifestly erroneous.

## CONCLUSION

For the foregoing reasons, we REVERSE the trial court's judgment. All costs of this proceeding are to be assessed to Ignont.

**REVERSED.**

**HUNTER, J., dissenting.**

A court of appeal may not set aside a trial court's findings of fact in the absence of manifest error or unless they are clearly wrong. *Kinnett v. Kinnett*, 20-01134 (12/10/21), 332 So. 3d 1149; *Evans v. Lungrin*, 97-0541 (La. 2/6/98), 708 So. 2d 731; *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989); *Buckner v. Berry*, 55,832 (La. App. 2 Cir. 7/17/24), 400 So. 3d 116; *Dunn v. Dunn*, 53,665 (La. App. 2 Cir. 1/13/21), 309 So. 3d 969. In order to reverse a trial court's determination, an appellate court must review the record in its entirety and determine that (1) a reasonable factual basis does not exist for the finding, and (2) the record establishes that the trial court is clearly wrong or manifestly erroneous. *Buckner*, *supra*; *Lowery v. St. Francis Medical Center*, 54,513 (La. App. 2 Cir. 5/25/22), 339 So. 3d 770; *Dunn*, *supra*. If the trial court's findings of fact are reasonable, appellate courts should not reverse them. *Id*.

In the instant case, in finding in favor of the plaintiff, the trial court stated:

[T]his Court was concerned by the actions of Mr. Breen in traveling to [the plaintiff's] location on the side of the Interstate 20, where the vehicle had stalled; removing the oil filter from the truck by hand; and leaving the scene with it, while [the plaintiff] remained stranded.

> The [plaintiff], whom this Court determined to be a credible witness, testified that Mr. Breen promised to "check the oil filter out, and get back with him in two or three days." Notwithstanding, he informed that he did not ever hear from the Defendant, nor anyone associated with his business. Mr. Breen, the owner, testified that he "tested it the next day" and then threw the filter away, as "nothing linked it back to me."

1

Implicit in the trial court's observations is its belief that Mr. Breen was not a credible witness. The trial court was in the position to observe the demeanor of the witnesses, evaluate their credibility, and make factual determinations accordingly. I believe we should give due deference to the trial court's credibility determinations and findings, affirm the judgment as to liability, and remand this case for a reassessment of damages.