THERIOT, J.
lain this medical malpractice case, the plaintiff-appellant, Frank Raborn, appeals the ruling of the trial court granting sum.-mary judgment in favor of the defendant-appellee, Shawn G. Dunn, M.D., and ordering the dismissal, with prejudice, of Mr. Raborn’s claims against Dr, Dunn. For the following reasons, we affirm.
FACTS AND PROCEDURAL BACKGROUND
In or around June of 2006, Mr. Raborn underwent a posterior lumbar vertebral fusion surgery at The NeuroMedical Center in Baton Rouge, Louisiana. Mr. Ra-born’s surgery was performed by Jeffrey R. Albea, M.D., who subsequently left practice with The NeuroMedical Center and moved out-of-state. Dr. Albea turned over post-operative care of Mr. Raborn to Paul Waguespack, M.D., another physician associated with The NeuroMedical Center. Dr. Waguespack treated Mr. Raborn for several- months, but ultimately referred Mr. Raborn to the appellee, Dr. Dunn, to address Mr. Raborn’s persistent post-operative complaints of lower back pain, buttocks pain, leg pain, and difficulty sitting.
Dr., Dunn is now, and has been at all operative times herein, a licensed physician, employed by The NeuroMedical Center, practicing in the field of neurology and pain management. Dr. Dunn first evaluated Mr. Raborn on October p, 2006, approximately four months after Mr. .Raborn’s surgery. Dr. Dunn recommended that Mr. Raborn undergo a discogram to determine the source of Mr. Raborn’s post-operative pain, Dr. Dunh performed a discogram on Mr, Raborn on March 9, 2007, after which Mr. Raborn began experiencing severe headaches, diminished bladder and bowel function, and worsening pain in his lower extremities. Mr. Raborn was then diagnosed with a spinal fluid leak. Dr. Dunn performed autologous .lumbar blood | ^patches on Mr. Raborn to address the spinal fluid leak on March 12, 2007, and March 16, 2007, respectively. Mr. Raborn claims he experienced -medical complications as a result of the blood patches, had difficulty communicating with Dr. Dunn, and was forced, to visit the emergency room at Our Lady of the Lake Hospital on April 3, 2007, whereupon he was diagnosed with corda equina syndrome.
Thereafter, in accordance with- the Louisiana Medical Malpractice Act (“LMMA”), La. R.S. 40:1299.41, et seq.,[1] Mr. Raborn filed a medical malpractice claim against several health care providers, including Dr. Dunn, with the Patient’s Compensation Fund. See La, R.S. 40:1299.47. A medical *107 review panel was convened and met to review the malpractice claim on July 21, 2009. That same day, the medical review panel rendered a unanimous decision finding “no deviation from the appropriate standard of medical care by [the defendants].” The medical review panel further determined that “[t]he discogram had a known complication that was addressed and the procedure led to meaningful surgery.”
On October 19, 2009, Mr. Raborn filed the underlying civil suit against several named defendants, including Dr, Dunn. Mr. Raborn claimed Dr. Dunn was. negligent in his failure to take precaution to prevent a spinal fluid leak; failure to attend to Mr. .Raborn’s medical, needs, despite the seriousness of such needs; failure to use reasonable care or diligence; failure to respond to calls and faxes; failure and delay in diagnosing; and any and all other acts of negligence that may be proven through discovery and trial. Mr. Raborn therefore prayed that judgment be entered in his favor and against Dr. Dunn.
4On April 25, 2016, following various pre-trial matters not at issue on appeal, Dr. Dunn filed a motion for summary judgment against Mr. Raborn. Dr. Dunn asserted that there were no genuine issues of material fact and that he was entitled to judgment as a matter of law. Dr. Dunn specifically averred that Mr. Raborn could not bear his burden of proving the applicable standard of care or proving a breach of the applicable standard of care. Dr. Dunn attached several exhibits in support of his motion for summary judgment, including an affidavit from the attorney chairman of the medical review panel and excerpts from the depositions of Mr. Raborn’s medical expert witness and treating physicians.
On June 3, 2016, Mr. Raborn filed an opposition to the motion for summary judgment. Mr. Raborn argued that there were serious factual disputes regarding the occurrences between March 16, 2007, when he received the second blood patch, and April 3, 2007, when he was diagnosed with corda equina syndrome. In .addition, Mr. Raborn claimed that even if Dr. Dunn’s decision to perform the discogram fell within the applicable standard of care, Dr. Dunn breached the applicable standard of care in his failure to provide appropriate instructions, warning, and advice before performing the blood patches and in his response to the blood patch complications. Mr. Raborn specifically asserted he was not warned of the possibility that changes in bladder and bowel function and/or worsening lower extremity function could signal a dangerous complication resulting from the blood patches.
Mr. Raborn submitted an affidavit from Mary Irving, who maintained the records for Mr. Raborn’s counsel of record, along with the following attached exhibits in opposition to the motion for summary judgment:
• Exhibit A—excerpt from the deposition of Dr. Dunn;
h* Exhibit B—March 12, 2007 records from The NeuroMedical Center;
• Exhibit C—March 16, 2007 records
• from The NeuroMedical Center;
• Exhibit D—affidavit of Walter Pañis, M.D.;
• Exhibit E—affidavit of Mr. Raborn;
• Exhibit F—March 12, 2007 conditions of admission, patient informed consent, and post-procedure discharge instructions from The NeuroMedical Center;
• Exhibit G—March 16, 2007 conditions of admission, patient informed consent, and post-procedure discharge instructions from The NeuroMedical Center;
• Exhibit H—narrative of Dr. Dunn sub? mitted to the medical review panel;
*108 • Exhibit I—excerpt from the deposition of Ziya L. Gokaslan, M.D., a radiologist with Johns Hopkins Hospital who treated Mr. Raborn in 2009;
• Exhibit J—March 29, 2007 report and conclusions from the Baton Rouge Radiology Group, Imaging Center, regarding MRI of Mr. Raborn’s lumbar spine; and
• Exhibit K—April 3, 2007 physician notes from the emergency room of Our Lady of the Lake Hospital.
On June 14, 2016, Dr. Dunn filed a motion to strike Mr. Raborn’s opposition and exhibits with an incorporated reply memorandum in support of the motion for summary judgment. Dr. Dunn first argued that Mr. Raborn’s opposition and exhibits should be stricken in their entirety. Dr. Dunn claimed the opposition constituted an improper expansion of the pleadings, reasoning Mr. Raborn sought to create a genuine issue of material fact with respect to the warning and counseling provided to him by Dr. Dunn. In the alternative, Dr. Dunn argued that Exhibits B, C, F, G, H, I, J, and K should be stricken as improper evidence on a motion for summary judgment under La. C.C.P. art. 966. Furthermore, Dr. Dunn argued that Exhibit D should be stricken on grounds it did not satisfy the physician | (¡witness expert qualification requirements of La. R.S. 9:2794. Finally, Dr. Dunn claimed that even if Exhibit D were admitted for purposes of the motion for summary judgment, the document was insufficient to establish a genuine issue of triable fact.
On June 20, 2016, the motion for summary judgment and motion to strike came before the trial court for -a hearing. Prior to the hearing, however, Mr. Raborn attempted to file a sur-reply on the motion for summary judgment along with the complete and properly certified copy of his medical records from The NeuroMedieal Center. Mr. Raborn also attempted to offer the medical records into evidence at the hearing on the motion for summary judgment. In open court, the trial court entertained and granted Dr. Dunn’s oral motion to strike the sur-reply and attached opposition evidence, explaining it could not consider this evidence under the controlling summary judgment law.
In addition, following the arguments of counsel on the remaining matters, the trial court orally denied Dr. Dunn’s motion to strike, in part, with respect to Exhibits D and I, and orally granted Dr. Dunn’s motion to strike, in part, with respect to Exhibits B, C, F, G, H, J, and K. The trial court further ruled that it could not consider any informed consent claims raised by Mr. Raborn and found that Dr. Dunn was entitled to judgment as a matter of law on Mr. Raborn’s medical malpractice negligence claims. The trial court explained that Mr. Raborn could not bear his burden of proving Dr. Dunn breached the applicable standard of care, as required by the LMMA.
On July 1, 2016, the trial court signed a final judgment in accordance with its oral ruling and for the reasons assigned in open court. The trial court granted Dr. Dunn’s motion for summary judgment and ordered the 17dismissal, with prejudice, of Mr. Raborn’s claims against Dr. Dunn; granted Dr. Dunn’s motion to strike Exhibits B, C, F, G, H, J, and K; granted Dr. Dunn’s motion to strike the sur-reply and attached opposition evidence; and denied Dr. Dunn’s motion to strike Exhibits D and I. Mr, Raborn now appeals.
ASSIGNMENTS OF ERROR
Mr. Raborn raises the following assignments of error:
1. The trial court committed legal error by excluding records created and signed by Dr. Dunn from evidence.
*109 2. The trial court committed legal error by not admitting into evidence records maintained by Dr. Dunn that were produced in discovery.
3. The trial court committed an abuse of discretion by not allowing Mr. Raborn to supplement the affidavit supporting the medical records with the actual certified copy of the records.
4. The trial court committed legal error in holding that Mr. Raborn was required to offer medical evidence of both the standard of care and deviation from the standard of care.
5. The trial court committed legal error in failing to find that numerous fact issues exist about what happened between the second blood patch, on March 16, 2007, and April 3, 2007, when a serious complication was diagnosed by another physician.
LAW AND DISCUSSION
Motion for Summary Judgment— Applicable Law
Louisiana Code of Civil Procedure art. 966 was amended and reenacted by La. Acts 2015, No. 422, § 1, with an effective date of January 1, 2016. The amended version of Article 966 governs the summary judgment proceedings in this case and provides as follows:
A. (1) A party may move for a summary judgment for all or part of the relief for which he has prayed. A plaintiffs motion may be filed at any time after the answer has been filed. A defendant’s motion may be filed at any time.
(2)The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, | ^except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
(3) After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.
(4) The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. The court may permit documents to be filed in any electronically stored format authorized by court rules or approved by the clerk of the court.
B. Unless extended by the court and agreed to by all of the parties, a motion for summary judgment shall be filed, opposed, or replied to in accordance with the following provisions:
(1) A motion for summary judgment and all documents in support of the motion shall be filed and served on all parties in accordance with Article 1313 not less than sixty-five days prior to the trial.
(2) Any opposition to the motion and all documents in support of the opposition shall be filed and served in accordance with Article 1313 not less than fifteen days prior to the hearing on the motion.
(3) Any reply memorandum shall be filed and served in accordance with Article 1313 not less than five days prior to the hearing on the motion. No additional documents may be filed with the reply memorandum.
(4) If the deadline for filing and serving a motion, an opposition, or a reply memorandum falls on a legal holiday, the motion, opposition, or reply is timely if it is filed and served no later than the next day that is not a legal holiday.
*110 C. (1) Unless otherwise agreed to by all of the parties and the court:
(a) A contradictory hearing on the motion for summary judgment shall be set not less than thirty days after the filing and not less than thirty days prior to the trial date.
(b) Notice of the hearing date shall be served on all parties in accordance with Article 1313(C) or 1314 not less than thirty days prior to the hearing..
(2) For good cause shown, the court may order a continuance of the hearing.
|fl(3) The court shall render a. judgment on the motion not less than twenty days prior to the trial.
(4) In all cases, the court shall state on the record or in writing the reasons for granting or denying the motion. If an appealable judgment is rendered, a party may request written reasons for judgment as provided in Article 1917.
D. (1) The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.
(2) The court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. Any objection to a document shall be raised in a timely filed opposition or reply memorandum. The court shall consider all objections prior to rendering judgment. The court shall specifically state on the record or in writing which documents, if any, it held to be inadmissible or declined to consider.
E‘. A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or-parties.
F. A summary judgment may be rendered or affirmed only as to. those issues set forth in the motion under consideration by the court at that time.
G. When the court grants a motion for summary-judgment in accordance with the provisions of this Article, that a party or non-party, is not negligent, is not at fault, or did not cause in whole or in part the injury or harm alleged, that party or non-party shall not be considered in any subsequent allocation of fault. Evidence shall not be admitted at trial to establish the fault of that party or non-party. During the course of the trial, no party or person shall refer directly or indirectly to any such fault, nor shall that party or non-party’s fault be submitted to the jury or included on the jury verdict form. ’
H. On review, an appellate court shall not reverse a trial court’s denial of a motion for summary judgment and grant a summary 1 ^judgment dismissing a case or a party without assigning the case for briefing and permitting the parties an opportunity to request oral argument. .
Motion for Summary Judgment— Procedure & Evidence
In his first and second assignments of error, taken together, Mr. Raborn argues *111 that the trial court legally erred in excluding several of the exhibits attached in opposition to the motion for summary judgment. Mr. Raborn submits that the trial court erred in excluding these exhibits based upon its erroneous interpretation and application of the amended version of Article 966.
Louisiana Code of Civil Procedure art. 966(A)(4) now provides that the only documents which may be filed in support of or in opposition to a motion for summary judgment are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. The legislative comments to the amended version of Article 966 clarify that Subparagraph (A)(4), which is new, sets- forth the exclusive list of documents that may be filed in support of or in - opposition to a motion for. summary judgment, and intentionally does not allow the filing of documents that are not included in the exclusive list, such as photographs, pictures, video images, or contracts, unless they are properly authenticated by an affidavit or deposition to which they are attached. See La. C.C.P. art. 966, cmt. (c) (2015).
In accordance therewith, we find that the trial court did not err in granting Dr. Dunn’s motion to strike Exhibits B, C, F, G, H, J, and K. These exhibits were offered by Mr. Raborn in opposition to the motion for summary judgment, but are not included within the exclusive list of documents that may be admitted into evidence and considered in support of or in opposition to a motion for summary judgment, since these exhibits are In not pleadings, memoranda, affidavits, depositions, . answers to interrogatories, certified medical records, written stipulations, or admissions. Dr. Dunn timely objected to the admission, of these documents, and the trial court did not err in refusing to consider these exhibits as proper evidence on the motion for summary judgment. ,
In rendering our decision on this'point, we recognize that several of the exhibits offered by Mr. Raborn in opposition to the motion for summary judgment, including Exhibits B, C, F, G, J, and K, appear to be excerpts from medical records created and maintained by Mr. Raborn’s 'health care providers. Mr. Raborn strenuously argues on appeal that these excerpts' were taken from voluminous certified medical records produced during discovery. Mr. Raborn claims that he could not 'have reasonably anticipated Dr. Dunn would challenge the admissibility of these documents, which he asserts were properly authenticated and should have been admitted into evidence. We are not persuaded by these arguments, however; because the excerpts were not certified as required by statutory law. '
Louisiana Revised Statute 13:3714(A) sets forth the following statutory guidelines concerning the admissibility of certified medical records:
Whenever a certified copy of the chart or record of any hospital, signed by' the administrator or the medical records librarian of the hospital in question, or a copy of a bill for services rendered, medical narrative, chart, or record of any other state health care provider, as defined by R.S. 40:1299.39(A)(1) and any other health care provider as defined in R.S. 40:1299.41(A), certified or attested to by the state health care provider or the' private health care provider, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the bills, medical narrative, chart, or record is sought to be used may summon and examine those making the original of the bills, medical *112 narrative, chart, or record as witnesses under cross-examination.
hJn the instant case, it is clear that the medical record excerpts submitted by Mr. Raborn in opposition to the motion for summary judgment did not meet the requirements for certification so as to be admissible in accordance with La. R.S. 13:3714(A). The medical record excerpts were not certified copies of charts or records signed by the administrator or the medical records librarian of the health care provider in question. Since the amended version of Article 966 exclusively recognizes the admissibility of certified medical records in support of or in opposition to a motion for summary judgment, we cannot say that the trial court erred in excluding the excerpts of Mr. Raborn’s medical records offered in opposition to the motion for summary judgment. Mr. Raborn’s first and second assignments of error do not merit relief.
In his related third assignment of error, Mr. Raborn argues that the trial court abused its discretion in refusing to allow him to supplement the opposition to the motion for summary judgment with the complete and properly certified copy of his medical records. Mr. Raborn contends that the trial court incorrectly assumed it did not have the authority to allow supplementation of the opposition to the motion for summary judgment under La. C.C.P. art. 966. Mr. Raborn claims that he should have been permitted to supplement the opposition to the motion for summary judgment in accordance with La. C.C.P. art. 967(A).
Louisiana Code of Civil Procedure art. 967(A) provides:
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... The court may permit affidavits to be supplemented or opposed by-depositions, answers to interrogatories, or by further affidavits.
| islnitially, we note that Mr. Raborn’s attempted supplementation of the opposition to the motion for summary judgment through his submission of a sur-reply with attached certified medical records does not appear to fall within the ambit of the supplementation of affidavits envisioned by La. C.C.P. art. 967(A). Mr. Raborn did not attempt to supplement an opposing affidavit on the motion for summary judgment by depositions, answers to interrogatories or further affidavits. Rather, Mr. Raborn attempted to supplement the opposition to the motion for summary judgment itself by submitting a sur-reply—-the admissibility of which is not recognized by Article 966— along with attached certified medical records that would have constituted proper opposition evidence as per La. C.C.P. art. 966(A)(4).
However, even if we were to find that Mr. Raborn’s attempted supplementation of his opposition to the motion for summary judgment had been permissible under La. C.C.P. arts. 966 and 967, the trial court could still have properly excluded the attached opposition evidence on grounds of timeliness. Louisiana Code of Civil Procedure art. 966(B) mandates that an opposition to a motion for summary judgment, along with all documents in support of the opposition, must be filed no less than fifteen days prior to the hearing on the motion. The time limitations established by La. C.C.P. art. 966(B) for the filing and serving of evidence in opposition to a motion for summary judgment are mandatory; evidence not timely filed can be ruled inadmissible and properly excluded by the trial court. See Buggage v. Volks Constructors, 06-0175 (La. 5/5/06), *113 928 So.2d 536 (per curiam) (addressing same in the context of an opposition and affidavit filed by a plaintiff on the day of the hearing on a motion for summary judgment).
Here, the record indicates that Mr. Raborn did not attempt to file the sur-reply and attached opposition evidence until, at the earliest, six days 114prior to the hearing on the motion for summary judgment.[2] Therefore, even if Mr. Raborn had been entitled to supplement his opposition to the motion for summary judgment with the sur-reply and attached opposition evidence, the trial court could still have refused to consider the opposition evidence, since the opposition evidence was not filed in accordance with the time limitations established by La. C.C.P. art. 966(B). Thus, we cannot say that the trial court erred in refusing to consider the sur-reply and attached evidence offered by Mr. Raborn in opposition to the motion for summary judgment. Mr. Raborn’s third assignment of error does not merit relief.

Motion for Summary Judgment—Merits

In his fourth assignment of error, which concerns the trial court’s granting of summary judgment on the merits, Mr. Raborn argues that the trial court erred in holding that he was required to present expert testimony as to both the standard of care and the deviation from the standard of care. In his related fifth assignment of error, Mr. Raborn argues the trial court erred by failing to consider numerous disputed issues of material fact, which he contends should have precluded the granting of summary judgment.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. See La. C.C.P. art. 966(A)(2). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the movant is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The legal standard to be used by the courts in granting a | ^motion for summary judgment remains unchanged by the recent legislative amendments to Article 966. See La. C.C.P. art. 966, cmt. (b) (2015).
The burden of proof on a motion for summary judgment rests with the movant. Nevertheless, if the movant will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. The burden is then on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the movant is not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1).
In ruling on a motion for summary judgment, the trial court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but rather to determine whether there is a genuine issue of triable fact. Hines v. Garrett, 04-0806 *114 (La. 6/25/04), 876 So.2d 764, 765 (per curiam). In determining whether summary judgment is appropriate on appeal, we review evidence de novo, using the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Temple v. Morgan, 15-1159 (La.App. 1 Cir. 6/3/16), 196 So.3d 71, 76, writ denied, 16-1255 (La. 10/28/16), 208 So.3d 889. Because it is the substantive law that determines materiality, whether a particular fact in dispute is material can only be seen in light of the substantive law applicable to the case. Bice v. Home Depot U.S.A., Inc., 16-0447 (La.App. 1 Cir. 12/22/16), 210 So.3d 315, 318.
The substantive law applicable to this case, the LMMA, provides that the plaintiff in a medical malpractice action must establish by a | ^preponderance of the evidence: 1) the standard of care applicable to the defendant physician; 2) that the defendant physician breached the applicable standard of care; and 3) that there was a causal connection between the breach and the resulting injury. See La. R.S. 9:2794(A); Schultz v. Guoth, 10-0343 (La. 1/19/11), 57 So.3d 1002, 1006. In order to meet this burden, the plaintiff is generally required to produce expert medical testimony. Boudreaux v. Mid-Continent Cas. Co., 05-2453 (La.App. 1 Cir. 11/3/06), 950 So.2d 839, 844, writ denied, 06-2775 (La. 1/26/07), 948 So.2d 171. The jurisprudence does recognize an exception to this rule in instances of obvious negligence, but the exception is limited to cases in which the medical and factual issues are such that a lay jury can perceive negligence as well as any expert. The requirement of producing expert medical testimony is especially apt when the defendant has filed a motion for summary judgment and supported the motion with expert opinion evidence that the treatment met the applicable standard of care. Id.
In the case at bar, Dr. Dunn attached several exhibits in support of his motion for summary judgment, including an affidavit from the attorney chairman of the medical review panel with an attached copy of the decision of the medical review panel and an excerpt from the deposition of Mr. Raborn’s expert witness, Dr. Pañis. Dr. Dunn pointed out that the medical review panel found he did not deviate from the applicable standard of care in his treatment of Mr. Raborn, and he noted that Dr. Pañis’ deposition testimony proved he agreed with the findings of the medical review panel. Dr. Dunn specifically directed the trial court to consider Dr. Pañis’ affirmative response, “I agree,” when asked whether he agreed with the findings of the medical review panel that there was no deviation from the Inappropriate standard of- care by Dr. Dunn in reference to the subdural hematoma.
In opposition to the motion for summary judgment, Mr. Raborn claimed that there were remaining issues of triable fact regarding the occurrences between March 16, 2007 and April 3, 2007. Mr. Raborn further asserted that even if Dr. Dunn’s decision to perform the discogram, .fell within the applicable standard of care, Dr. Dunn had breached the standard of care in his failure to provide appropriate instructions, warning, and advice in advance of the blood patches, and in jiis response to the blood patch complications. Mr, Raborn stressed that he was not warned of the possibility that changes in bladder and bowel function and/or worsening lower extremity-function could signal a dangerous complication to the blood patches. Mr. Ra-born attached several exhibits in opposition to the motion for summary judgment, but, for the reasons explained in the preceding sections of this opinion, Exhibits A, D, E, and I were the sole admissible items of opposition evidence.
*115 Nevertheless, Mr. Raborn maintains on appeal that the opposition evidence was sufficient to establish genuine issues of material fact regarding Dr. Dunn’s medical treatment and communication of warnings and complications that could arise as a result of the medical procedures. Mr. Ra-born notes several of the averments made in his opposition affidavit concerning his medical condition after the second blood patch conflict with the representations made by Dr. Dunn. In addition, Mr. Ra-born no,tes Dr. Pañis indicated in his affidavit that Dr. Dunn should have informed Mr. Raborn to immediately report any worsening of bladder or bowel function or new problems with his lower extremities and, upon the report of these | ^conditions, should have performed imaging studies, which may have allowed consideration of strategies to mitigate the subdural hema-toma.
We have reviewed the evidence admitted for purposes of the motion for summary judgment de novo, and we agree with the trial court'that there were no genuine issues of material fact and that Dr. Dunn was entitled to judgment as a matter of law. Dr. Dunn submitted evidence in support of the motion for summary judgment sufficient to satisfy his burden of pointing out an absence of support for one or more essential elements to Mr. Raborn’s medical malpractice claims; that is, Dr. Dunn pointed out that Mr. Raborn did not appear to have factual support sufficient to prove the applicable standard of care or a deviation from the applicable standard of care. Mr. Raborn then bore the burden of producing factual evidence sufficient to establish that he would be able to bear his burden of proof under the- LMMA on these issues at trial. Mr. Raborn did not satisfy this responsive burden.
Critically, the sole expert opinion evidence offered by Mr. Raborn in opposition-to the motion for,summary judgment concerned Dr. Dunn’s communication of warnings regarding the possible side effects of the blood patches and his instructions concerning the reporting of potential complications. This evidence, while potentially relevant to the . issue of informed consent, is not appurtenant to the pleaded allegations of surgical negligence. It is well-settled under Louisiana law that a claim for surgical malpractice and a claim for breach of the duty to obtain informed consent are distinct causes of action based upon different statutory duties. See Lieux v. Mitchell, 06-0382 (La.App. 1 Cir. 12/28/06), 951 So.2d 307, 317, writ denied, 07-0905 (La. 6/15/07), 958 So.2d 1199 (citing Gunter v. Plauche, 439 So.2d 437, 440 (La. 1983)).
I min Lieux, 951 So.2d at 317, this court explained that the facts which give rise to a claim of surgical malpractice do not necessarily encompass a claim for lack of informed consent. Furthermore, according to controlling statutory law, in a lawsuit against a physician involving a medical malpractice claim based on the failure of the physician or other health care provider to disclose or adequately to disclose the risks and hazards involved in the .medical care or surgical procedure rendered by the physician or other health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent. See La. R.S. 40:1299.40(E)(2)(a) (prior to repeal and reenactment by La. Acts 2012, No. 600, § 2, eff. June 7, 2012).
In the case at bar, Mr. Raborn repeatedly and plainly alleged acts of medical negligence by Dr. Dunn. Mr. Raborn never expanded the pleadings to include a, claim *116 of informed consent or alleged that Dr. Dunn’s failure to communicate the medical risks or hazards of the blood patch reasonably influenced his decision to consent to the medical procedures, which, according to La. R.S. 40:1299.40(E)(2)(a), is the only basis of recovery permitted in a medical malpractice claim against a physician based upon the failure of the physician to adequately disclose potential risks. Therefore, we agree with the trial court’s conclusion that a claim of informed consent was not properly before it. Cf., Lieux, 951 So.2d at 317.
In addition, because Mr. Raborn did not present any other expert medical opinion evidence in opposition to the motion for summary judgment regarding the standard of care governing the actual pleaded allegations of medical negligence or disputing the representation of his own expert witness who testified that he agreed with the findings of the medical review panel, |2owe are bound to conclude that Mr. Ra-born failed to satisfy his responsive burden on the motion for summary judgment. Thus, we also agree with the trial court’s finding that Dr. Dunn was entitled to judgment as a matter of law on the medical malpractice claims. The trial court did not err in granting the motion for summary judgment and ordering the dismissal, with prejudice, of Mr. Raborn’s medical malpractice claims against Dr. Dunn. Mr. Ra-born’s fourth and fifth assignments of error are without merit.
DECREE
For the foregoing reasons, we affirm the ruling of the trial court granting summary judgment in favor of the defendant-appel-lee, Shawn G. Dunn, M.D., and ordering the dismissal, with prejudice, of the plaintiff-appellant’s claims against Dr. Dunn. All costs of this appeal are assessed to the plaintiff-appellant, Frank Raborn.
AFFIRMED.
J. CHUTZ, concurs.

. The LMMA was re-designated as La. R.S. 40:1231.1 to 1231,10 by House Concurrent Resolution No, 84 of the 2015 Regular Session, with an effective date of June 2, 2015. Here, we refer to the prior version of the LMMA, which was" in effect throughout the time period in question.

. We note that the record on appeal does not establish the exact date Mr. Raborn attempted to file the sur-reply and attached opposition evidence. However, Mr. Raborn necessarily attempted to file the sur-reply after Dr. Dunn filed the motion to strike and incorporated reply memorandum in support of the motion for summary judgment on June 14, 2016, i.e., six days prior to the hearing on the motion for summary judgment.