STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 1604

SAMUEL F. PATTERSON, III

VERSUS

DARRYL W. PETERSON, MD AND LAMMICO INSURANCE COMPANY, INC.

Judgment Rendered:___**AUG 0 3 2020**___

********

Appealed from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. C643866

The Honorable Janice G. Clark, Judge Presiding

********

Earl A. Marcelle, III
Baton Rouge, LA

Counsel for Plaintiff/Appellant
Samuel F. Patterson, III

Janie Languirand Coles
Jonathan E. Thomas
Baton Rouge, LA

Counsel for Defendants/Appellees
Darryl W. Peterson, M.D. and
LAMMICO

********

BEFORE: HIGGINBOTHAM, PENZATO AND LANIER, JJ.

Penzato, J., concurs

**LANIER, J.**

In the instant appeal, plaintiff/appellant, Samuel F. Patterson, III, challenges the judgment of the Nineteenth Judicial District Court, which granted the motion for summary judgment filed by the defendants/appellees, Darryl W. Peterson, M.D., and Louisiana Medical Mutual Insurance Company, Inc. (LAMMICO), and dismissed Mr. Patterson's petition for damages with prejudice. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On February 3, 2012, Mr. Patterson underwent a surgical procedure to have a torn rotator cuff repaired in his right shoulder. The surgery allegedly lasted about eleven hours and required Mr. Patterson to be admitted into the hospital. Dr. Peterson performed the surgery, which was non-emergency in nature. Dr. Peterson received informed consent from Mr. Patterson to perform the rotator cuff surgery, but during the course of the surgery, Dr. Peterson located a tear in Mr. Patterson's labrum and the presence of a cyst. Mr. Patterson alleged that Dr. Peterson proceeded with repairing the tear and removing the cyst without first obtaining Mr. Patterson's consent to do so.

Mr. Patterson alleged that Dr. Peterson's actions caused the surgery to last much longer than it should have, and as a result, Mr. Patterson sustained neurological complications. Mr. Patterson claimed that upon awakening in the recovery area, the left side of his body was numb and immovable, although the surgery occurred on his right shoulder. As of November 23, 2015, the date that Mr. Patterson filed his petition for damages, he claimed that he still walked with a noticeable limp and had numbness in his left foot. Mr. Patterson, who is approximately six feet, two inches tall and weighs over 300 pounds, alleged that Dr. Peterson told him that the traction table on which the surgery was performed was unsuitable for a man of his size, but Dr. Peterson decided to proceed with the

2

surgery anyway. Mr. Patterson claims that his injuries stem from the use of this traction table, which was inappropriate for the surgery. Specifically, he claims that by having to lie on his left side for such a prolonged period of time, he suffered vessel compression and sciatic nerve impingement, which resulted in his numbness and difficulty with walking.

On January 25, 2013, Mr. Patterson filed a petition to establish a medical review panel (MRP) with the Patient's Compensation Fund, in which he alleged the same facts and injuries. He again named Dr. Peterson as the surgeon. Mr. Patterson named "ABC Insurance" as Dr. Peterson's liability insurer, because he did not know at the time that Dr. Peterson's insurer was LAMMICO. The MRP convened on August 10, 2015 and rendered a unanimous decision that there was no evidence to support Mr. Patterson's allegations that Dr. Peterson did not meet the applicable standard of care during the surgery.[1] The MRP further found that there was no evidence to support that Dr. Peterson lacked Mr. Patterson's informed consent to unilaterally extend the surgery, or that the traction table or surgical procedure was inadequate for someone of Mr. Patterson's size. The MRP concluded with finding there were no remaining issues of material fact.

Mr. Patterson then filed his petition for damages on November 23, 2015, making the same allegations he made before the MRP, and naming Dr. Peterson and LAMMICO as defendants. The defendants filed a motion for summary judgment on August 24, 2017. After a series of continuances, a hearing on the motion was held on April 11, 2019. Based on the hearing, the trial court signed a judgment on April 29, 2019, granting the defendants' motion for summary

---

[1] The MRP consisted of three orthopedic surgeons.

3

judgment and dismissing all claims in Mr. Patterson's petition with prejudice. Mr. Patterson followed with the instant appeal.[2]

## ASSIGNMENTS OF ERROR

Mr. Patterson alleges the following four assignments of error:

1. The trial court erred when it impliedly decreed that Mr. Patterson failed to show that Dr. Peterson deviated from the pre-operative standard of care after admitting he had not performed a pre-operative review of Mr. Patterson's medical history.

2. The trial court erred when it impliedly decreed that Mr. Patterson failed to satisfy the elements necessary to show that he could not have provided informed consent.

3. The trial court erred when it impliedly decreed that Mr. Patterson failed to satisfy the elements necessary to apply the doctrine of *Res Ipsa Loquitur*.

4. The trial court erred when it impliedly rejected Mr. Patterson's contention that the doctrine of *Res Ipsa Loquitur* established Dr. Peterson's liability.

## STANDARD OF REVIEW

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. See La. C.C.P. art. 966(A)(2). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the movant is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

The burden of proof on a motion for summary judgment rests with the movant. Nevertheless, if the movant will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the

---

[2] The appeal was fax-filed on June 27, 2019, but not filed by the Clerk of Court until July 3, 2019. (R. 368) The trial court signed the order of appeal on July 22, 2019. (R. 376)

4

adverse party's claim, action, or defense. The burden is then on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the movant is not entitled to judgment as a matter of law. See La. C.C.P. art. 966(D)(1).

In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but rather to determine whether there is a genuine issue of triable fact. *Raborn v. Albea*, 2016-1468 (La. App. 1 Cir. 5/11/17), 221 So.3d 104, 113. In determining whether summary judgment is appropriate on appeal, we review evidence *de novo,* using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Id.* at 114. Because it is the substantive law that determines materiality, whether a particular fact in dispute is material can only be seen in light of the substantive law applicable to the case. *Id.*

The substantive law applicable to this case, the Louisiana Medical Malpractice Act, provides that the plaintiff in a medical malpractice action must establish by a preponderance of the evidence: 1) the standard of care applicable to the defendant physician; 2) that the defendant physician breached the applicable standard of care; and 3) that there was a causal connection between the breach and the resulting injury. See La. R.S. 9:2794(A); *Schultz v. Guoth*, 2010-0343 (La. 1/19/11), 57 So.3d 1002, 1006. In order to meet this burden, the plaintiff is generally required to produce expert medical testimony. *Boudreaux v. Mid–Continent Cas. Co.*, 2005-2453 (La. App. 1 Cir. 11/3/06), 950 So.2d 839, 844, writ denied, 2006-2775 (La. 1/26/07), 948 So.2d 171.

## DISCUSSION

### *Standard of Care*

Mr. Patterson alleges that Dr. Peterson admitted in his deposition that he did not review Mr. Patterson's prior medical history before performing the surgery,

and that his failure to do so was a breach of the standard of care. In his deposition, Dr. Peterson stated Mr. Patterson was referred to him by Dr. Joseph Boucree, who had been treating Mr. Patterson for shoulder pain. Dr. Peterson stated that he did not receive Mr. Patterson's prior medical history from Dr. Boucree at the time of the referral, but a pre-operative MRI was performed, which revealed the tear to the labrum and the cyst. This is corroborated by Dr. Peterson's operative report, which lists three pre-operative diagnoses: "[p]osterior labrum cyst with possible tear," "[r]otator cuff tendinitis with possible tear," and "[s]ubacrominal impingement."

In addition, Dr. Peterson's own medical record of Mr. Patterson contains a brief medical history, which was given to Dr. Peterson by Mr. Patterson. Mr. Patterson indicated his right shoulder pain stemmed from a car accident on September 21, 2011. He then began treatment with Dr. Boucree on his cervical and lumbar spine. Dr. Peterson also included that an MRI was conducted on Mr. Patterson's shoulder. This report from Dr. Peterson's initial visit with Mr. Patterson on January 26, 2012 and the operative report indicate that Mr. Patterson was incorrect in his allegation that Dr. Peterson discovered these abnormalities during the course of the surgery.

To refute the defendants' motion for summary judgment, Mr. Patterson obtained an independent medical examination (IME) from Dr. Douglas C. Brown on September 6, 2018. Dr. Brown stated that Mr. Patterson had a history of lumbosacral problems for approximately two years prior to the surgery and had received epidural steroid injections for lumbar radiculitis. Mr. Patterson told Dr. Brown that Dr. Peterson told him after the surgery that a larger table should have been used, but Dr. Brown also states that Mr. Patterson's contention is not reflected in any of Dr. Peterson's notes. Dr. Brown's physical examination of Mr.

6

Patterson indicated a smooth gait, no evidence of foot drop, and good heel and toe balance.

Dr. Brown commented in the IME that he discussed Mr. Patterson's case with other orthopedic surgeons, and although he had performed shoulder arthroscopy numerous times himself, he and his fellow orthopedic surgeons had never heard of a sciatic nerve injury related to shoulder arthroscopy or that a larger table would be necessary for a larger patient such as Mr. Patterson. Dr. Brown also agreed with the MRP doctors that Dr. Peterson did not deviate from the standard of care that was required in Mr. Patterson's surgery. We therefore agree with the trial court that there is no issue of material fact as to whether Dr. Paterson deviated from the applicable standard of care.

*Informed Consent*

In his petition, Mr. Patterson alleges that he gave Dr. Peterson informed consent only to repair his torn right rotator cuff, and that Dr. Peterson went outside the scope of that informed consent when he repaired the tear to Mr. Patterson's labrum and removed the paralabral cyst. The consent form, signed by Mr. Patterson on the day of the surgery, February 3, 2012, at 6:08 a.m., describes the procedure for which Mr. Patterson gave consent as "Right shoulder arthroscopic subacromial decompression Superior labral Anterior Posterior reconstruction with arthroscopic synovectomy." Immediately following, the consent form states:

> I further authorize Dr. Peterson to perform any other procedure that in his judgment is advisable for my well being. This operation has been explained to me. Alternative methods of treatments, if any, have also been explained to me, as have the advantages and disadvantages of each. I am advised that though good results are expected, the possibility and nature of complications cannot be accurately anticipated and, therefore can be no guarantee, either expressed or implied as to the results of surgery or as to cure.

Informed consent is a claim that can be separate from a medical malpractice claim. See *Lugenbuhl v. Dowling*, 96-1575 (La. 10/10/97), 701 So.2d 447, 456.

7

Under the Louisiana informed consent law in effect at the time of Mr. Patterson's surgery, La. R.S. 40:1299.40 (repealed, effective June 12, 2012), a physician is required to provide his patient with sufficient information to allow the patient to make an informed and intelligent decision on whether to submit to the proposed course of treatment.[3] This information should include, if possible, "the nature of the pertinent ailment or condition, the general nature of the proposed treatment or procedure, the risks involved in the proposed treatment or procedure, the prospects of success, the risks of failing to undergo any treatment or procedure at all, and the risks of any alternate methods of treatment." *Suarez v. Mando*, 2010-0853 (La. App. 5 Cir. 3/29/10), 62 So.3d 131, 135, writ denied, 2011-0885 (La. 6/17/11), 63 So.3d 1036, quoting *Hondroulis v. Schuhmacher*, 553 So.2d 398, 410 (La. 1988) (on rehearing).

As in cases alleging breach of the standard of care, the plaintiff in an informed consent case bears the burden of proving: (1) the existence of a material risk which the physician must disclose; (2) the failure of the physician to inform the patient of a material risk; (3) the realization of the material risk; and (4) a causal connection between the failure to inform the patient of the risk and the realization of the risk. *Suarez*, 62 So.3d at 135.

The consent form, which was submitted with the defendants' motion for summary judgment, contains a paragraph that gives a non-exhaustive list of some of the known risks involved with the surgery that Mr. Patterson underwent. One of these risks named in the list is "damage to nerves." Mr. Patterson complains of this very injury in his petition when he alleges "neurological impairment that affected the functionality of his left-side." The record is therefore clear that Mr. Patterson was informed by Dr. Peterson of this risk. Furthermore, Mr. Patterson

---

[3] Louisiana's informed consent law is currently found in La. R.S. 40:1157.1.

8

gave Dr. Peterson consent to "perform any other procedure" that was advisable in Dr. Peterson's judgment for Mr. Patterson's well-being. As stated earlier, the tear and the cyst were discovered by MRI prior to the surgery and prior to Mr. Patterson's signing the consent form. Furthermore, they were directly related to the planned procedure. We agree with the MRP and find there is no issue of material fact that Mr. Patterson had given appropriate informed consent prior to the surgery.

### Res Ipsa Loquitur

Mr. Patterson did not raise the issue of *res ipsa loquitur* in his original petition for damages, nor in his supplemental and amending petition for damages, filed on February 23, 2017. It was not until he filed his second supplemental and amending petition for damages, on January 8, 2019, that Mr. Patterson invoked *res ipsa loquitur* by alleging "the aforementioned events could not have reasonably occurred absent the negligence on the part of Dr. Peterson," and that "the sciatic nerve injury... is of a type that is *not* an inherent risk of the surgical procedure." (emphasis his). Mr. Patterson's inclusion of *res ipsa loquitur* as a claim is largely due to the statement in Dr. Brown's report, dated September 6, 2018, that neither Dr. Brown nor any orthopedic surgeon with whom he discussed Mr. Patterson's case ever encountered a sciatic nerve injury arising out of a shoulder arthroscopy.

Although the fact that an accident has occurred does not alone raise a *presumption* of the defendant's negligence, the doctrine of *res ipsa loquitur* ("the thing speaks for itself") permits the *inference* of negligence on the part of the defendant from the circumstances surrounding the injury. *Cangelosi v. Our Lady of the Lake Regional Medical Center*, 564 So.2d 654, 665 (La. 1989) (on rehearing). The doctrine of *res ipsa loquitur* involves the simple matter of a plaintiff's using circumstantial evidence to meet the burden of proof by a preponderance of the evidence. *Id.* However, *res ipsa loquitur* does not apply if

9

there is sufficient direct evidence explaining the occurrence and establishing the details of the negligence charged. *Linnear v. CenterPoint Energy Entex/Reliant Energy*, 2006-3030 (La. 9/5/07), 966 So.2d 36, 42, quoting *Walker v. Union Mill, Inc.*, 369 So.2d 1043, 1048 (La. 1979).

In the instant case, there is ample direct evidence to point to whether or not Dr. Peterson was negligent. Mr. Patterson's medical history, taken by both Dr. Boucree and Dr. Peterson, the MRI, the operative report, the IME performed by Dr. Brown, Dr. Peterson's deposition, and the consent form, among other things, are all direct evidence to be used in the determination of negligence on the part of Dr. Peterson. The one comment by Dr. Brown, which could also be interpreted as evidence that Mr. Patterson's injury could not have been caused by the surgery, is insufficient to raise the doctrine of *res ipsa loquitur* when there is a wealth of direct evidence that exists in the instant case. We therefore find the doctrine of *res ipsa loquitur* to be inapplicable. See *Linnear*, 966 So.2d at 42.

## DECREE

The judgment of the Nineteenth Judicial District Court, granting summary judgment on behalf of the defendants/appellees, Darryl W. Peterson, M.D., and LAMMICO Insurance Company, Inc., and dismissing with prejudice the petition for damages filed by the plaintiff/appellant, Samuel F. Patterson, III, is affirmed. All costs of this appeal are assessed to Mr. Patterson.

**AFFIRMED.**