Judgment rendered September 22, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,100-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SANDRA MITCHELL DIETLE                     Plaintiff-Appellant

versus

JAMES VERNON LAFLEUR                       Defendants-Appellees
AND SHELTER MUTUAL
INSURANCE COMPANY

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Union, Louisiana
Trial Court No. 47,176

Honorable Bruce Edward Hampton, Judge

* * * * *

CAMPBELL, HOUSE & COMPANY, LLC        Counsel for Appellant
By: Wade L. House

DAVENPORT, FILES & KELLY, LLP         Counsel for Appellee,
By: M. Shane Craighead                James Vernon LaFleur

COOK, YANCEY, KING & GALLOWAY         Counsel for Appellee,
By: Gregg A. Wilkes                   Shelter Mutual Ins. Co.
    David L. Wilkes

* * * * *

Before MOORE, GARRETT, and COX, JJ.

**MOORE, C.J.**

Sandra Mitchell Dietle ("Sandy") appeals a judgment that granted two summary judgments and dismissed her claims for property damage and other losses against James Vernon LaFleur ("Vernon") and his homeowner's carrier, Shelter Mutual Insurance. For the reasons expressed, we affirm.

## FACTUAL BACKGROUND

Sandy, a physical therapist, and Vernon, an electrician, met at an Alcoholics Anonymous meeting in 2001; a romance ensued, but they never got married. Vernon owned an inherited tract of land on Jackson Road, in the country, east of Farmerville, La. Sandy loved the scenery and the solitude, so they decided to build a house there. They agreed that Vernon would provide the land and as much of the labor as he could, and Sandy, who was still working regularly, would pay for all building supplies. They built a nice house; Sandy estimated that between her out-of-pocket expenses and cosigning a mortgage for him, she invested about $250,000 in the house. They moved in together by late 2004.

Unfortunately, the relationship faltered. Sandy was trying to advance her career, while Vernon was mostly "off the wagon" and not working. They separated several times, and by April 2015 she had moved out for good, taking most of the contents of the house with her, and was living in an apartment in West Monroe.

By that time, Vernon was chronically drunk, angry, and calling her constantly. According to Sandy's deposition, he often told her to "come burn down the house." On the evening of April 23, 2015, she stopped taking his calls; he texted, "If you don't pick up the phone, I'm coming your way." Sandy reported this to her landlord, who called the Ouachita Parish Sheriff's

Office. A little while later, Vernon arrived at her apartment, severely drunk, and started knocking (his description) or pounding (hers) on her door and windows. Before he could do any harm, deputies arrived and carried him to the sheriff's office. He was charged with criminal trespass (to which he later pled guilty and paid a fine).

While he was being held, someone from the State Fire Marshal came to the jail and told Vernon his house had burned down; he claimed that this was the first he knew of it. The Fire Department got the alarm at 9:33 pm, and arrived at the scene, east of Farmerville, at 9:44 pm. According to the OPSO report, Vernon was taken into custody in West Monroe about 90 minutes later, at 11:11 pm.

Vernon declined to make a claim on his homeowner's policy, issued by Shelter. According to Vernon's deposition, this infuriated Sandy, who wanted to get her money out of the house.

## PROCEDURAL HISTORY

Sandy filed this suit against Vernon and Shelter in April 2016. She alleged that she and Vernon co-owned the house, that she had spent over $200,000 improving it, but that it had caught fire due to his "inattentiveness" and the fire was "uncontrollable as a result of his failure to take reasonable steps to retard its progress." She claimed damages for loss of value of the property, loss of use and enjoyment, and mental anguish and emotional distress.

Vernon admitted that the house had burned down, but he generally denied all other allegations. He reconvened for the furniture, tools, equipment, and other items that Sandy had removed from the house before it burned; he valued these at $250,000.

2

Shelter admitted that it issued a homeowner's policy, but showed that the beneficiary thereof was Vernon, not Sandy, and that, at any rate, the policy covered only bodily injury and property damages, not the kind of loss Sandy was claiming. It requested a declaratory judgment declaring no coverage.

In April 2020, Shelter filed this motion for summary judgment. It argued that Sandy could not produce any evidence that Vernon was responsible for any act or omission that caused or contributed to the fire. In support, it attached Vernon's and Sandy's depositions, taken in 2017. In the relevant portions,[1] Vernon said he did not know how the house caught fire and burned down; he had nothing to do with it; he had heard a rumor that someone might have been running a meth lab in one of the outbuildings, and it could have exploded, but he had no personal knowledge of this. Further, "not to [his] knowledge" did he ever call Sandy and tell her to burn down the house, but "it could be possible"; he eventually denied that he told her to come burn down the house, and "categorically denied" telling her this in a phone call that she recorded and gave to the Fire Marshal.

In her deposition, Sandy admitted that despite the "information and belief" recited in her petition, she had no knowledge of how the fire started, other than that Vernon was highly drunk at the time; she had no witnesses, photographs, or physical or documentary evidence as to the cause. However, she stated that she had recorded some cellphone calls between herself and Vernon, had given the tapes to the Fire Marshal, and would forward them to Vernon's counsel.

---

[1] The depositions apparently served as discovery in this and other litigation between the parties.

In June 2020, Vernon filed his own motion for summary judgment, adopting Shelter's arguments and attachments.

Sandy opposed both motions. In support, she attached Vernon's response to her request for production of documents in which he provided "transcripts of the audio recordings of conversations between [Sandy and Vernon], prepared by our [Vernon's counsel's] office," with the remark, "Undersigned counsel is no longer in possession of the audio recordings." Attached to this was a typed transcript, not certified, and full of blank spaces where the transcriber could not make out what was being said. According to Sandy, this reproduced a conversation of April 23, 2015, right before the fire, and it quotes Vernon saying, "I'd love to burn this m.f.'er down" and "I think I might be burning it. Burn this f***ing place to the ground. Just burn it. Would that work for you? You could collect the insurance." Sandy argued that this created a genuine issue whether Vernon started the fire.

Shelter and Vernon both objected to the typed transcript as not proper summary judgment evidence, under La. C.C.P. art. 966 A(4). They labeled the transcript "unsubstantiated speculation."

## ACTION OF THE TRIAL COURT

After a hearing in September 2020, the district court issued written reasons. It cited the exclusive list of documents permitted to support or oppose a motion for summary judgment, under La. C.C.P. art. 966 A(4), and found that the uncertified transcript was not one of them. The court then cited Sandy's admission that she had no "exhibit, photograph, written statement, videotape, any type of documentary or physical evidence to indicate how this fire started," and found she could not create a genuine issue.

4

The court rendered one judgment granting both motions for summary judgment. Sandy took this devolutive appeal, raising two assignments of error.

## APPLICABLE LAW

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief sought by a litigant. *Murphy v. Savannah*, 18-0991 (La. 5/8/19), 282 So. 3d 1034. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of civil actions (except for certain domestic matters) and it is favored in our law. La. C.C.P. art. 966 A(2); *Murphy v. Savannah*, *supra*. A court must grant a motion for summary judgment if, after an opportunity for adequate discovery, the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 A(3).

The only documents that may be filed in support of or in opposition to the motion are "pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La. C.C.P. art. 966 A(4). This itemization is the "exclusive list" of admissible documents on the motion for summary judgment. La. C.C.P. art. 966, Comments – 2015, comment (c); *Ag Resource Mgmt. LLC v. Bunge N. Am. Inc.*, 53,417 (La. App. 2 Cir. 3/4/20), 293 So. 3d 1179; *Newsome v. City of Bastrop*, 51,752 (La. App. 2 Cir. 11/15/17), 245 So. 3d 248, fn. 1; *Raborn v. Albea*, 16-1468 (La. App. 1 Cir. 5/11/17), 221 So. 3d 104.

If the party moving for summary judgment will not bear the burden of proof at trial on the issue before the court on the motion, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966 D(1); *Johnson v. Purpera*, 20-01175 (La. 5/13/21), __ So. 3d __. Thereafter, the burden shifts to the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.*; *Gauthier v. Foster Homes LLC*, 53,143 (La. App. 2 Cir. 11/20/19), 284 So. 3d 1206. Appellate review of the grant or denial of summary judgment is de novo. *Johnson v. Purpera*, *supra*; *Gauthier v. Foster Homes LLC*, *supra*.

Louisiana courts apply a duty-risk analysis in determining whether liability exists under the facts of a particular case. Under this analysis, the plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to that standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Bufkin v. Felipe's La. LLC*, 14-0288 (La. 10/15/14), 171 So. 3d 851, and citations therein; *Shields v. McInnis Brothers Constr. Inc.*, 53,581 (La. App. 2 Cir. 3/3/21), 314 So. 3d 1079. As to the element of cause-in-fact, the question is whether the defendant's conduct was a substantial factor in causing the fire. *Hanks v. Entergy Corp.*, 06-0477 (La. 12/18/06), 944 So. 2d 564. On the motion for

6

summary judgment, the question is whether the plaintiff can offer any evidence to raise a genuine issue that the defendant's conduct substantially caused or contributed to the fire. *Carpenter v. Foremost Signature Ins. Co.*, 47,008 (La. App. 2 Cir. 2/29/12), 87 So. 3d 264.

## DISCUSSION

By her first assignment of error, Sandy urges the court erred in failing to consider the transcript of the recorded phone conversations between Sandy and Vernon that was produced by Vernon in response to a request for production. She concedes that Art. 966 A(4) provides the exclusive list of evidence that may be offered to support or oppose a motion for summary judgment. However, she shows that Vernon's counsel provided the transcript in response to her discovery request; she testified by deposition that she made the recording and gave it to Vernon's counsel for transcription; and Vernon has never denied the authenticity or contents of the transcript. She argues that these facts add sufficient layers of reliability to make the transcript an "admission" for purposes of Art. 966 A(4). She concludes that the statements therein create a genuine issue whether Vernon set the fire.

Sandy candidly admits that the transcribed phone call is not on Art. 966 A(4)'s exclusive list of admissible summary judgment evidence. In light of the plain wording of the article and the revision comment, this court has expressly declined to expand the exclusive list. *Ag Resource Mgmt. LLC v. Bunge N. Am. Inc.*, *supra*; *Newsome v. City of Bastrop*, *supra*; *see also*, *Raborn v. Albea*, *supra*; *Stevens v. St. Tammany Parish Gov't*, 19-1555 (La. App. 1 Cir. 4/8/21), __ So. 3d __. Despite the indicia of reliability so ably outlined in brief, we must continue to hold that the legislature intended to

7

allow only the designated items, and not other discovery matters, to support or oppose the motion. Specifically, we cannot find that the transcript is tantamount to an admission that Vernon started the fire, when in his deposition he testified he had no idea how it started. On these facts, we could not find sufficient reliability, even if we could stretch the limits of Art. 966 A(4).

This assignment of error lacks merit.

By her second assignment of error, Sandy urges that even if the transcript was inadmissible, the court erred in granting summary judgment, as other admissible evidence created a genuine issue. She contends that circumstantial evidence may be used to establish a genuine issue, *Lyons v. Airdyne Lafayette Inc.*, 563 So. 2d 260 (La. 1990), including proof of the source of a fire, *Naquin v. Marquette Ins. Co.*, 244 La. 569, 153 So. 2d 395 (1963). She cites her own deposition testimony that Vernon told her to come burn down the house, and his admission that he was so drunk that night that he could not recall what he told her or even if he "left anything burning." She submits that in the absence of an exact cause of the fire, these admissions are enough to create a genuine issue.

The court has closely examined Vernon's deposition and finds that it is often rambling, contradictory, and riddled with lapses of memory. Still, he was consistent in maintaining he had nothing to do with the fire, and no knowledge of how it occurred. By contrast, Sandy admitted in her deposition that she had no witnesses, photographs, or physical or documentary evidence about how the fire started. In short, her claim is speculative and lacks hard evidence. Even though circumstantial evidence may be used to meet the applicable burden of proof, pure speculation may

8

not. *State v. Miller*, 53,356 (La. App. 2 Cir. 4/22/20), 295 So. 3d 443, *writ denied*, 20-00888 (La. 11/24/20), 305 So. 3d 104; *Thibodeaux v. Circle K Stores Inc.*, 20-540 (La. App. 3 Cir. 5/5/21), 318 So. 3d 465.

On de novo review, we find that Sandy has not produced factual support sufficient to establish the existence of a genuine issue whether Vernon started the fire. The district court did not err in granting the summary judgment.

## CONCLUSION

For the reasons expressed, the judgment is affirmed. Costs are to be paid by the appellant, Sandra Mitchell Dietle.

**AFFIRMED**.